Opinion filed November 29, 2007











 
 
  
 
 







 
 
  
 
 




Opinion filed November 29,
2007

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00037-CR 

                                                    __________

 

                             WILLIAM CARL ISBELL, JR., Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 259th District Court

                                                          Jones
County, Texas

                                                     Trial
Court Cause No. 9449

 



 

                                                                   O
P I N I O N

            The
jury convicted William Carl Isbell, Jr. of the second degree felony offense of
possession of methamphetamine in an amount of four grams or more but less than
200 grams.  The jury assessed punishment at eight years confinement.  Appellant
challenges his conviction in two issues.  We affirm.

                                                               Background
Facts








Law
enforcement officers executed a search warrant on appellant=s residence during the
evening of January 29, 2004, for the purpose of searching for methamphetamine. 
As part of the search, the officers looked inside a refrigerator that was in
the kitchen of the residence.  In the freezer section of the refrigerator, one
of the officers found a jar that contained 130.92 grams of a substance
containing methamphetamine.  Appellant and his wife, Anita Marie Isbell, were
both charged with possession of the methamphetamine.  In a separate case, Anita
pleaded guilty, and the jury assessed her punishment at five years
confinement.  In this cause, the trial court instructed the jury in the charge
that, if an offense was committed, Anita was an accomplice to the offense.

                                                                 Issues
on Appeal

Appellant
presents two issues for review.  In his first issue, appellant contends that
the evidence was legally and factually insufficient to support his conviction
for possession of methamphetamine.  In his second issue, appellant contends
that the accomplice testimony of Anita was legally insufficient to support his
conviction.

                                                        Sufficiency
of the Evidence

In
order to determine if the evidence is legally sufficient, we must review all of
the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the
evidence is factually sufficient, the appellate court reviews all of the
evidence in a neutral light. Watson v. State, 204 S.W.3d 404, 414 (Tex.
Crim. App. 2006) (overruling in part Zuniga v. State, 144 S.W.3d 477
(Tex. Crim. App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex.
Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).
Then, the reviewing court determines whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or
whether the verdict is against the great weight and preponderance of the
conflicting evidence. Watson, 204 S.W.3d at 414-15; Johnson, 23
S.W.3d at 10-11.  The jury, as the finder of fact, is the sole judge of the
weight and credibility of the witnesses=
testimony.  Tex. Code Crim. Proc. Ann. art.
36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  








In
cases involving unlawful possession of a controlled substance, the State must
prove that the accused exercised care, custody, control, or management over the
substance and that the accused knew the matter possessed was contraband.  Tex. Health & Safety Code Ann.
' 481.002(38) (Vernon
Supp. 2007); Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App.
2005); Martin v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).  The
State does not have to prove the accused had exclusive possession of the
contraband; joint possession is sufficient to sustain a conviction.  Cude v.
State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986).  When the accused is not
shown to have had exclusive possession of the place where the contraband was
found, the evidence must affirmatively link the accused to the contraband.  Pollan
v. State, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981).  The Court of
Criminal Appeals has recently stated that the legal issue with respect to such Alinks@ is Awhether there was evidence of circumstances,
in addition to mere presence, that would adequately justify the conclusion that
the defendant knowingly possessed the substance.@ 
Evans v. State, 202 S.W.3d 158, 161-62 n.9 (Tex. Crim. App. 2006).

Factors
that may affirmatively link an accused to contraband include the following: 
(1) whether the accused was present when the search was conducted; (2)
whether the contraband was in plain view; (3) whether the accused was in close
proximity to and had access to the contraband; (4) whether the accused was
under the influence of narcotics when arrested; (5) whether the accused
possessed other contraband or narcotics when arrested; (6) whether the accused
made incriminating statements when arrested; (7) whether the accused attempted
to flee; (8) whether the accused made furtive gestures; (9) whether there was
an odor of contraband; (10) whether other contraband or drug paraphernalia was
present; (11) whether the accused owned or had the right to possess the place
where the drugs were found; (12) whether the place where the drugs were found
was enclosed; (13) whether the accused was found with a large amount of
cash; and (14) whether the conduct of the accused indicated a consciousness of
guilt.  Evans, 202 S.W.3d at 162 n.12; Swarb v. State, 125 S.W.3d
672, 684 (Tex. App.CHouston
[1st Dist.] 2003, pet. dism=d);
Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.CHouston [14th Dist.] 2001, pet. ref=d).  No set formula exists
to dictate a finding of affirmative links sufficient to support an inference of
knowing possession of contraband.  Taylor v. State, 106 S.W.3d 827, 831
(Tex. App.CDallas
2003, no pet.).  The number of factors present is not as important as the
logical force or the degree to which the factors, alone or in combination, tend
to affirmatively link the defendant to the contraband.  Bates v. State,
155 S.W.3d 212, 216-17 (Tex. App.CDallas
2004, no pet.); Hurtado v. State, 881 S.W.2d 738, 743 (Tex.  App.CHouston [1st Dist.]
1994, pet. ref=d); Whitworth
v. State, 808 S.W.2d 566, 569 (Tex. App.CAustin
1991, pet. ref=d).

 








                                                                 Evidence
at Trial

The
State called four witnesses at the guilt/innocence phase of the trial: (1)
Department of Public Safety Sergeant James C. Rhodes, (2) Department of Public
Safety Lieutenant John Murphy, (3) Department of Public Safety Sergeant Anthony
Bennett, and (4) Anita.  Appellant called two witnesses at the guilt/innocence
phase of the trial: (1) Jones County Probation Officer Glenda Riley and (2) his
employer, Ronnie Joe Woodard.

The
evidence established that appellant and Anita owned the house at 630 Eighth
Street in Hawley and that they had lived there for several years.  Three minor
children lived at the residence with them:  appellant=s sixteen-year-old daughter from a previous
relationship and appellant and Anita=s
ten-year-old and seven-year-old daughters.  Sergeant Rhodes testified that, in
early January 2004, he received information concerning alleged narcotics use by
appellant or Anita.  Based on the information, Sergeant Rhodes conducted
surveillance on the residence at 630 Eighth Street in Hawley.  Sergeant Rhodes
determined that appellant and Anita lived at the residence, that appellant
worked at an apartment complex in Abilene, that appellant drove a white
Chevrolet pickup, that Anita worked as a school teacher in Hawley, and that
Anita drove a brown or tan SUV.  Sergeant Rhodes testified that, during
surveillance, he saw appellant=s
pickup parked at the residence a number of times.  Lieutenant Murphy testified
that he drove by the residence seven or eight times during the surveillance
period and that he saw appellant=s
pickup at the residence on several of the occasions that he drove by the
residence.          








On
January 12, 2004, Sergeant Rhodes collected nine trash bags from the dumpster
at appellant=s
residence.  In the trash bags, Sergeant Rhodes found numerous used syringes
that contained a light brown substance that he believed to be methamphetamine. 
He submitted four syringes to the Department of Public Safety laboratory for
testing, and the test results showed that the substances in the syringes
contained methamphetamine.  During his testimony, Sergeant Rhodes described
items B also referred
to as precursors B
that are used in the manufacturing process for methamphetamine, such as
pseudoephedrine tablets, anhydrous ammonia, lithium battery strips, rock salt,
and ammonia.  Sergeant Rhodes testified that he also found the following items
in the trash bags: forty-one empty twenty-four pack pseudoephedrine packages,
two dismantled lithium batteries, a plastic milk container containing a brown
rock salt solution, rock salt and a sludge product from the use of a HCL
generator, and two empty bottles that had contained methyl alcohol.

On
January 26, 2004, Sergeant Rhodes collected five trash bags from the dumpster
at appellant=s
residence.  He found numerous used syringes in the trash bags and submitted
three of the syringes that contained a light brown substance to the Department
of Public Safety Laboratory for testing.  Test results showed that the
substances in the syringes contained methamphetamine. Sergeant Rhodes also
found numerous dismantled lithium batteries and a bottle that had been adapted
to be a HCL generator in the trash bags.

On
January 28, 2004, Sergeant Rhodes obtained a search warrant for the search of
appellant=s
residence.  The warrant commanded law officers to arrest appellant and Anita. 
On January 29, 2004, Sergeant Rhodes and Sergeant Bennett arrested appellant at
his place of employment in Abilene.  Sergeant Rhodes and Sergeant Bennett found
several packages of pseudoephedrine in appellant=s
pickup.  Lieutenant Murphy, Department of Public Safety Sergeant Jason Graham,
and Department of Public Safety Trooper Charles Wheeler arrested Anita at a
school in Hawley.  During searches of Anita and her vehicle, the officers
seized marihuana, a syringe containing a light brown substance believed to be
methamphetamine, and a glass smoking pipe.   

After
the arrests, the officers transported appellant and Anita to their residence,
and the officers conducted a search of the residence.  Anita was inside the
residence during the search; appellant was outside the residence during the
search.  The officers found and seized a number of items of evidence during the
search.  In the freezer section of a side-by-side refrigerator that was in the
kitchen of the residence, Sergeant Bennett found a bottle containing 130.92
grams of a brown liquid substance that later tested positive for
methamphetamine.  Sergeant Bennett=s
testimony showed that he found the bottle containing the methamphetamine on one
of the shelves in the freezer and that the bottle was not hidden behind
anything.  The State introduced into evidence a photograph showing where the
bottle was when Sergeant Bennett found it.  The photograph demonstrated that
the bottle would have been in plain view when the freezer door was open.








The
officers also found a container in plain view on the kitchen counter that
contained pseudoephedrine tablets that were being soaked in acetone to remove
the ephedrine.  They found another container on the kitchen counter that also
contained pseudoephedrine tablets that were being soaked.  The officers also
found a container on the kitchen counter that contained numerous packages of
Sudafed.  In the master bedroom, the officers found a syringe containing a
light brown substance believed to be methamphetamine, drug paraphernalia, and
ephedrine.  They also found a spoon with a small piece of cotton in it in the
master bedroom.  Sergeant Rhodes testified that spoons and cotton are used in
connection with syringes for the purpose of injecting methamphetamine.  The
officers discovered various items that are used in the manufacture of
methamphetamine, such as starter fluid and muriatic acid, in the closet in the
master bedroom.  They also found a container of unused syringes in the same
closet.  The officers saw men=s
clothing items and men=s
cologne in the closet in the master bedroom.  Lieutenant Murphy testified that
there were numerous men=s
items throughout the house.  The officers found drug paraphernalia and small
packets containing substances that later tested positive for methamphetamine in
the sixteen-year-old girl=s
bedroom.  The State introduced into evidence photographs of the items that were
found during the search.

Lieutenant
Murphy testified that he saw appellant outside the residence about an hour
after the search began.  Lieutenant Murphy said that, at that time, he noticed
that appellant had beady eyes and had needle tracks on the inside of his arms,
both of which were signs of drug use.  During cross-examination, appellant
showed his arms to Lieutenant Murphy.  Lieutenant Murphy said that there were
no fresh needle marks on appellant=s
arms but that there appeared to be one needle mark scar on appellant=s right arm.








Anita
testified that appellant slept and lived in the master bedroom of the residence
and that she slept in other rooms or, sometimes, on the floor of the
residence.  She also said that appellant was aware that the methamphetamine and
other seized items were in the house.  Anita also testified that, during the
three-year period prior to January 29, 2004, appellant had made Aquite a bit@ of methamphetamine and
that she and appellant had used Aquite
a bit@ of
methamphetamine.  She said that she and appellant had used methamphetamine on a
daily basis during that three-year period and that, before the three-year
period, they had used it off and on.  Anita said that her role in making the
methamphetamine was to extract ephedrine from the pseudoephedrine tablets and
that appellant=s role
in the process was to take the extracted ephedrine to another location to Acook it.@  She also said that the
items Sergeant Rhodes seized from the trash bags belonged to appellant and
her.  Anita also said that she had residual scarring on her arms from injecting
methamphetamine and that she did not know why appellant did not have the same
type of scarring on his arms.

Woodard
testified that he was appellant=s
employer.  He said that he had known appellant all of appellant=s life and that appellant
did excellent work.  He also said that he never saw marks on appellant=s arms or any other sign
indicating appellant was addicted to or had used methamphetamine.  Woodard also
said that appellant and Anita had lived at their house on Eighth Street for
several years.

Probation
Officer Riley testified that appellant was ordered to report to the probation
department as a condition of his release on bond in this cause.  She said that
appellant frequently asked to be tested for drugs and alcohol.  She also said
that a random urinalysis taken in May 2005 came back negative.  Probation
Officer Riley also testified that appellant=s
file indicated that he exhibited no signs of methamphetamine addiction.

                                                                        Analysis








After
reviewing all of the evidence, we hold that the evidence is both legally and
factually sufficient to support the jury=s
verdict.  Although appellant was not in exclusive possession of the place where
the officers found the methamphetamine, the circumstances justify the jury=s conclusion that appellant
exercised care, custody, control, or management over the methamphetamine that
was seized from the freezer and that he knew the matter possessed was
methamphetamine.  The State established affirmative links between appellant and
the methamphetamine.  The evidence established that appellant owned and lived
at the residence.  Appellant had lived at the residence for years.  Thus,
appellant had the right to possess the place where the officers found the
methamphetamine.  The methamphetamine was in the freezer side of the
refrigerator that was in the kitchen of the residence.  As a member of the
household, appellant would have had access to the freezer.  The evidence also
established that the methamphetamine was easy to see if the freezer door was
open.  Additionally, drug paraphernalia and many items used to manufacture
methamphetamine were present in the residence, and many of the seized items
were in plain view.  The containers that were being used in connection with
extracting ephedrine were in plain view on the kitchen counter.  The officers
found a container on the kitchen counter that contained numerous packages of
Sudafed.  The officers also found a syringe, drug paraphernalia, and ephedrine
in the master bedroom and syringes, starter fluid, and muriatic acid in the
closet in the master bedroom.  They also observed men=s items throughout the house and in the closet
of the master bedroom.  We find that these affirmative links sufficiently
linked appellant to the methamphetamine to support his conviction.  Anita=s testimony provided further
evidentiary support for the conviction.

Based
on the evidence linking appellant to the methamphetamine, a rational jury could
have found beyond a reasonable doubt that appellant knowingly possessed the
methamphetamine.  Furthermore, the evidence supporting the verdict is not so
weak that the verdict is clearly wrong and manifestly unjust nor is the verdict
against the great weight and preponderance of the conflicting evidence.  We
overrule appellant=s
first issue.

                                                             Accomplice
Testimony

In
his second issue, appellant contends that Anita=s
accomplice testimony was legally insufficient to support his conviction.  The
trial court charged the jury that Anita was an accomplice to the charged
offense.  Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 2005) provides as follows:

A
conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.   

 

It is not necessary that the corroborating evidence directly connect the
defendant to the crime or that it be sufficient by itself to establish guilt;
it need only tend to connect the defendant to the offense.  Cathey v. State,
992 S.W.2d 460, 462 (Tex. Crim. App. 1999).  In conducting a sufficiency review
under the accomplice-witness rule, a reviewing court must eliminate the
accomplice testimony from consideration and then examine the remaining portions
of the record to see if there is any evidence that tends to connect the accused
with the commission of the crime.  Solomon v. State, 49 S.W.3d 356, 361
(Tex. Crim. App. 2001).  If the combined weight of the non-accomplice evidence
tends to connect the defendant to the offense, the requirement of Article 38.14
has been fulfilled.  Cathey, 992 S.W.2d at 462.    








Eliminating
Anita=s testimony from
consideration, the State presented substantial evidence at trial that tended to
connect appellant to the offense.  As explained above, the State established
affirmative links between appellant and the methamphetamine.  The State
established the affirmative links through the testimony of the officers.  The
non-accomplice evidence tended to connect appellant to the offense, and,
therefore, the State satisfied the requirement of Article 38.14.

Appellant
also discusses the law of parties in his second issue.  See Tex. Pen. Code Ann. ' 7.02(a)(2) (Vernon 2003). 
However, the State did not argue that appellant was guilty under the law of
parties, and the law of parties has no bearing on this appeal.  We overrule
appellant=s second
issue.

                                                               This
Court=s Ruling

We
affirm the judgment of the trial court.

 

 

TERRY McCALL                                                        

JUSTICE

November 29,
2007

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.