[CB1] 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-120-CR

 

 

KELLIE PARKER SUTTON                                                                 APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                                      OPINION

 

                                                       ------------

I.  Introduction

Appellant
Kellie Parker Sutton appeals her conviction for unlawful possession of a
firearm.  In two issues, Sutton argues
that the evidence is legally and factually insufficient to support her conviction
and that the trial court erred by denying her motion for a directed
verdict.  We will affirm.








II.  Background

At
approximately 2:00 a.m. on November 19, 2008, several officers with the Fort
Worth Police Department approached a house in search of a fugitive they thought
was inside of the house.  When one of the
officers stopped next to a truck parked in front of the house, Sutton shouted
from the house, AI have a gun[;] get your ass away
from my truck or I=ll shoot
you.@  The officers identified themselves and walked
up to the front porch.  A short time later,
Sutton opened the front door, told the officers that the house was hers, and
gave them permission to search the house. 
Sutton sat on a bed located just inside of the front door as the
officers conducted their search.[1]

Officers
arrested Sutton after they discovered that she was wanted for several
outstanding traffic violations.  They
searched the immediate area where she had been sitting during the search of the
house for the fugitive and located a loaded pistol directly underneath the
mattress where she had been seated.








At trial,
Officer Ryan Stepp testified that an officer observed
Sutton naked and without a weapon before she opened the front door to speak to
the police officers.  Stephen Minshew testified that he was the only person at the house
that was not arrested on November 19, 2009, that the house belonged to an
individual named ADennis,@ and that
five or six people stayed at the house.  Minshew recalled that Sutton slept in the Aliving
room,@ but he
also testified that Sutton did not sleep in the bed next to the front door.

Sutton
moved for a directed verdict on the ground that the State Aha[d] not
proven possession,@ but the trial court denied the
motion.  A jury convicted Sutton of
unlawful possession of a firearm, and the trial court sentenced her to four
years=
confinement.

III.  Standards of Review

A.      Legal Sufficiency








A
challenge to the trial court=s ruling
on a motion for a directed verdict is, in actuality, a challenge to the legal
sufficiency of the evidence to support the conviction.  Williams v. State, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); Madden v. State,
799 S.W.2d 683, 686 (Tex. Crim. App. 1990), cert.
denied, 499 U.S. 954 (1991).  In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007).  This standard gives full
play to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d
at 778.  The trier
of fact is the sole judge of the weight and credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the factfinder.  Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d
9, 16B17 (Tex. Crim. App. 2007).  We must presume that the factfinder
resolved any conflicting inferences in favor of the prosecution and defer to
that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

B.      Factual Sufficiency








When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party.  Steadman v. State,
280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the
evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, although legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at 417.

Unless we
conclude that it is necessary to correct manifest injustice, we must give due
deference to the factfinder=s
determinations, Aparticularly those determinations
concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); see Steadman,
280 S.W.3d at 246. 
Evidence is always factually sufficient when it preponderates in favor
of the conviction.  Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d
at 417.








In
determining whether the evidence is factually insufficient to support a
conviction that is nevertheless supported by legally sufficient evidence, it is
not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Watson, 204 S.W.3d at 417.  
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson, 23 S.W.3d at 12; Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997). 
Unless the record clearly reveals that a different result is appropriate,
we must defer to the jury=s determination of the weight to
be given contradictory testimonial evidence because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8. 
Our deference in this regard safeguards the defendant=s right
to a trial by jury.  Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).

IV.  Evidentiary Challenges

In her
first issue, Sutton argues that there is legally and factually insufficient
evidence that she possessed the firearm found under the mattress where she sat
during the officers= search
of the house for the fugitive.  She
argues that A[u]sing the >links= test,
the evidence suggests that [she] did not intentionally and knowingly possess a
firearm.@  In her second issue, Sutton argues that the
trial court erred by denying her motion for a directed verdict.

A.      Unlawful Possession of a Firearm and Links

The State
was required to prove beyond a reasonable doubt that Sutton, a felon, was in
unlawful possession of a firearm.  See
Tex. Penal Code Ann. ' 46.04(a)(1)
(Vernon Supp. 2009).  To establish the
offense of unlawful possession of a firearm by a felon, the State must show
that the defendant was previously convicted of a felony offense and possessed a
firearm after the conviction and before the fifth anniversary of the person=s release
from confinement.  Id.  Sutton does not dispute that she had a prior
felony conviction.  Instead, she
challenges only the evidence that she possessed a firearm.








The penal
code defines possession as Aactual
care, custody, control, or management.@  Id. ' 1.07(a)(39) (Vernon Supp. 2009). 
A person commits a possession offense only if he voluntarily possesses
the prohibited item.  Id. ' 6.01(a)
(Vernon 2003).  Possession is voluntary
if the possessor knowingly obtains or receives the thing possessed or is aware
of his control of the thing for a sufficient time to permit him to terminate
his control.  Id. ' 6.01(b).








If the
firearm is not found on the defendant=s person
or is not seen in the defendant=s
exclusive care, custody, control, or management, as in this case, the State
must offer additional, independent facts and circumstances that link the
defendant to the firearm.  Bates v.
State, 155 S.W.3d 212, 216B17 (Tex.
App.CDallas
2004, no pet.); see Villarreal v. State, Nos. 02-07-00329-CR,
02-07-00330-CR, 2009 WL 671042, at *1 (Tex. App.CFort
Worth Mar. 12, 2009, pet. ref=d) (mem. op., not designated for publication) (AThe
. . . links doctrine also applies to the possession of firearms.@).  The purpose of linking the accused to the
firearm is to protect innocent bystanders from conviction solely on their
fortuitous proximity to the firearm.  See
Poindexter v. State, 153 S.W.3d
402, 406 (Tex. Crim. App. 2005). 
Such links may be established by either direct or circumstantial
evidence.  See Evans v. State, 202
S.W.3d 158, 161B62 (Tex.
Crim. App. 2006).  An appellate court
examines factors such as whether the firearm was in plain view, whether the
defendant owned the premises where the firearm was found, whether the defendant
made incriminating statements, whether the defendant was in close proximity to
the firearm and had ready access to it, whether the defendant attempted to
flee, whether the defendant=s conduct
indicated a consciousness of guilt, whether the defendant had a special
connection to the firearm, and whether the firearm was found in an enclosed
space.  Smith v. State, 176 S.W.3d 907, 916 (Tex. App.CDallas
2005, pet. ref=d); Westbrook v. State,
No. 02-07-00455-CR, 2008 WL 5672533, at *4 (Tex. App.CFort
Worth Feb. 26, 2009, pet. ref=d) (mem. op, not designated for publication).  Significantly, it is the logical force of the
factors, not the number of factors present, that
determines whether the elements of the offense have been established.  See Smith, 176 S.W.3d at 916.

B.      Legal Sufficiency Review








There are
several facts that link Sutton to the firearm found under the mattress.  First and foremost, Sutton made incriminating
statements to the officers.  She
affirmatively declared, AI have a gun,@ and A[G]et your ass away from my truck or I=ll shoot you.@  [Emphases added.]  Sutton=s
statements that she had a gun and that she would shoot the person near her
truck are highly probative, logically forceful links that she possessed a
firearm for the simple reason that when she announced to the police, AI have a
gun,@ she
admitted possessing a firearm. 
Sutton=s admissions essentially
constitute an explicit recognition by her that she exercised actual care,
custody, control, or management over a firearm. 
See Rhodes v. State, No. 12-01-00268-CR, 2003 WL 22240365, at *2
(Tex. App.CTyler
Sept. 30, 2003, no pet.) (mem. op., not designated
for publication) (holding evidence legally sufficient to support conviction for
unlawful possession of a firearm when defendant testified that he owned,
transported, and fired firearm); Moore v. State, No. 07-01-00477-CR,
2002 WL 31627079, at *1B2 (Tex. App.CAmarillo
Nov. 22, 2002, pet. ref=d) (mem. op.,
not designated for publication) (concluding appeal was frivolous and mentioning
that appellant admitted possessing firearm).

Another
fact that links Sutton to the firearm is her admission of ownership or
responsibility for the house in which the firearm was found.  Officer Brian Oglesby testified in part as
follows:

[State]:  What did she tell you
about the house?

 

[Officer Oglesby]:  We asked her
if it was her residence, basically, just to establish some sort of
residency.  She said that it was her
house and she didn=t have a problem with us
checking.  [Emphasis added.]

 

As the State points out, the jury
could have rationally inferred from Sutton=s
statement of ownership or responsibility over the house that she could exercise
care, custody, and control over the house=s
contents, including the gun.  See
Hughes v. State, 612 S.W.2d 581, 583 (Tex. Crim.
App. 1981) (stating that appellant=s
residency is a factor in determining if she exercised care, custody, or
management).








Another
fact that links Sutton to the firearm is the proximity of the mattress under
which the gun was found to the front door of the house where Sutton yelled at
the officers.  Officer Oglesby testified
that Sutton was standing at the front doorway when she yelled at the
officers.  After Sutton yelled at the
officers, she closed the front door for a brief period before coming back to
the door to speak with the officers. 
Officer Stepp testified that the bed where the
gun was found was located only Ainches@ away
from the front door and that it would only take a few seconds for someone who
was at the front door to place the gun underneath the mattress.  According to Officer Oglesby, the grip of the
gun was facing towards the outside edge of the mattress, and the gun was Areadily grabbable.@  Considering the proximity of the mattress to
the front door, the jury could rationally have inferred that Sutton exercised
actual care, custody, or control over the gun before placing it under the
mattress and after yelling at the officers that she had a gun.  See Gipson v. State, Nos.
05-01-00770-CR, 05-01-00771-CR, 05-01-00772-CR, 05-01-00773-CR, 2003 WL
21053918, at *5 (Tex. App.CDallas
May 12, 2003, no pet.) (not designated for
publication) (holding that evidence was sufficient to
support conviction for unlawful possession of a firearm in part because pistol
was conveniently accessible to appellant, who was seated on couch).

Another
link, though less logically forceful than those already addressed, is the fact
that the gun was found Adirectly beneath@ where
Sutton was sitting when the officers searched the house.  Officer Oglesby testified that the officers
asked Sutton to have a seat but did not tell her to sit on the bed.  Also, Sutton was the only person at the front
of the houseCwhich is where officers found the
gunCwhen the
officers entered the house.  The fugitive
that the officers were searching for was hiding in a bathroom at the back of
the house, and Minshew testified that he was sleeping
in his bedroom at the back of the house.








Viewing
all of the evidence in the light most favorable to the prosecution, giving full
play to the responsibility of the trier of fact to
resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts, a rational jury could
have found beyond a reasonable doubt that Sutton possessed the gun that
officers discovered underneath the mattress that Sutton sat on during the
officers= search
of the house and that was located only Ainches@ away
from the front door of the house where Sutton yelled to the officers, AI have a
gun[;] get your ass away from my truck or I=ll shoot you.@  See Jackson, 443 U.S. at 319, 99
S. Ct. at 2789; Clayton, 235 S.W.3d at
778.  Accordingly, we hold that the
evidence is legally sufficient to support Sutton=s
conviction.  We overrule the part of
Sutton=s first
issue challenging the legal sufficiency of the evidence and her second issue.

C.      Factual Sufficiency

Sutton
argues that the evidence is insufficient to show that she possessed the gun
because (1) Minshew testified that ADennis@ owned
the house, (2) she followed the officers= commands
to sit down on furniture that was nearest to the door, (3) the bed where
the gun was found opened into one of the living rooms in the house and was
where another individual was staying, and (4) an officer saw her naked and
without a gun.  We address Sutton=s
arguments relating to her being naked and without a gun first.








Officer Stepp is the only witness who testified about Sutton being
naked and without a gun.  He testified on
direct examination as follows:

[State]:  How did you get into
the house?

 

[Officer Stepp]:  We were waiting for the person that -- the
female that yelled that comment to come to the door and talk with us.  It took a few minutes and she opened the
door.

 

[State]:  Okay.  When you say it took a few minutes, do you
know why it took a few minutes?

 

[Officer Stepp]:  I assumed she was putting clothes on.  We had information over our earpieces that
there was a female that was observed naked inside the residence and told us to
hold on.

 

Officer Stepp testified on cross-examination
as follows:

 

[Defense counsel]:  Is it Officer
Stepp?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Did you ever
see my client in possession of that weapon?

 

[Officer Stepp]:  No, sir.

 

[Defense counsel]:  Okay.  That=s
a no?

 

[Officer Stepp]:  Yes, correct, sir.  No, sir, I did not.

 

[Defense counsel]:  Let me ask
you this.

 

[Defense counsel]: 
May I approach that board, Your Honor?

 

THE COURT: 
Yes, sir.

 

[Defense counsel]:  This bed
right here, right here, the bed where the gun was found?

 








[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  How close is
that to the front door?

 

[Officer Stepp]:  Inches, inches away from the front door.

 

[Defense counsel]:  If someone
was at that front door with a weapon and then stuck it underneath the mattress, that would only take a couple of seconds, correct?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  I think it=s your testimony that at
some point my client closed the door while y=all were still outside
before y=all entered the house,
right?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  She was gone
for a couple of minutes I think you said, correct?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Or I don=t want to put words in
your mouth.  The door was closed for a
couple of minutes and then she reappeared, correct?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Okay.  I think you testified that someone said that
my client was naked; is that correct?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Was that, I
mean, was that one of the other officers?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Okay.  So there was an officer that made a visual
and saw that my client was naked?








[Officer Stepp]:  Saw a female that was naked, yes.

 

[Defense counsel]:  Saw a female
that was naked?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Did that
officer see a weapon at that point?

 

[Officer Stepp]:  No, sir.

 

[Defense counsel]:  So there was
a female.  And we know there was only one
female in the house, correct?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Is it safe to
assume that that female was my client?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Client at the
door naked with no weapon?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Closes the
door for a couple of minutes?

 

[Officer Stepp]:  (Moving head up and down).

 

[Defense counsel]:  I need you to
answer.

 

[Officer Stepp]:  Yes, sir. 
Yes, sir.

 

[Defense counsel]:  And then she
reappears with clothes on?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  Now, is it
fair to say that in that amount of time she went to put clothes on?

 

[Officer Stepp]:  Yes, sir.

 








[Defense counsel]:  Okay.  Certainly if she had a weapon, it would only
take a couple of seconds, correct?

 

[Officer Stepp]:  Yes, sir.

 

[Defense counsel]:  But we
know she didn=t have a weapon because
she was naked?

 

[Officer Stepp]:  No weapon was seen in her hands when she
was seen naked.  [Emphases added.]

 













Sutton
makes only two statements in her argument relevant to this evidence.  She first states, ANeither officer could testify that they personally saw
[Sutton] possess a firearm.  In fact,
Officer Stepp testified that when [Sutton] came to
the door and yelled at the officers she was nude.@  The second statement that Sutton makes
regarding her being naked is as follows: 
AOfficer Stepp further testified that [Sutton] did not have a weapon
in her possession when she was undressed.@  Following Sutton=s logic,
her argument appears to be that because she did not have a firearm when she was
naked, and she was naked when she was at the front door and yelled at the
officers, then she did not possess a firearm when she was at the front door and
yelled at the officers.  Sutton=s
argument emphasizes that no one actually saw her with a firearm in her
hands.  But whether the officers actually
saw Sutton with a firearm is not conclusive of whether she Apossessed@ the
firearm; that is, whether she had a firearm in her care, custody, control, or
management.  Rather, we must examine the
record for additional, independent facts and circumstances that link Sutton to
the firearm.  Considering all of the
evidence, including Sutton=s
statements to the officers, her close proximity to where the firearm was
ultimately found, and her admission of ownership or responsibility for the
house, the jury was free to infer and conclude, as it obviously did, that
Sutton had possessionCthat is, exercised actual care,
custody, control, or managementCof the
firearm even though none of the officers actually saw her with a firearm in her
hands.  The evidence that Sutton said
that the house was her residence and that she allowed the police officers to
enter; that she said, AI have a gun@; that
she sat down by her own choice on the mattress under which the gun was found;
and that she was within inches of the mattress where the gun was found when she
was at the front door and made the statement, AI have a
gun,@ is not
rendered factually insufficient as a result of Officer Stepp=s
testimony that no one saw Sutton with a firearm in her hands when she was seen
naked.  See Westbrook v. State,
No. 02-07-00455-CR, 2008 WL 5672533, at *5 (Tex. App.CFort
Worth Feb. 26, 2009, pet. ref=d) (mem. op., not designated for publication) (holding
that the evidence was legally and factually sufficient to support conviction
for unlawful possession of a firearm by a felon when officers discovered a
firearm that was wrapped in a denim shirt that appellant was able to directly
point out to the officers in a bedroom); Ramos v. State, Nos.
02-07-00118-CR, 02-07-00119-CR, 2008 WL 623777, at *7 (Tex. App.CFort
Worth Mar. 6, 2008, pet. ref=d) (mem. op., not designated for publication) (holding
that the evidence was legally and factually sufficient to support conviction
for unlawful possession of a firearm when shotgun was found in master bedroom
closet, which appellant shared with his wife); Smith v. State, No.
12-06-00021-CR, 2007 WL 2178541, at *3 (Tex. App.CTyler
July 31, 2007, no pet) (mem. op, not designated
for publication) (holding that the evidence was legally and factually
sufficient to support conviction for unlawful possession of a firearm when
pistol was found in plain view in linen closet next to bedroom where appellant
slept).

Regarding
the other bases for Sutton=s factual
sufficiency argument, as the trier of fact, the jury
was free to disbelieve or give less weight to Minshew=s
testimony regarding who owned the house and who stayed where in the house.  See Lancon,
253 S.W.3d at 706 (reaffirming that Aan
appellate court must give deference to a jury=s
decision regarding what weight to give contradictory testimonial evidence
because the decision is most likely based on an evaluation of credibility and
demeanor, which the jury is in the better position to judge@).  Further, the evidence that supports the
verdict is not rendered insufficient merely because Sutton presented
conflicting evidence.  See Anderson v.
State, 701 S.W.2d 868, 872 (Tex. Crim. App.
1985), cert. denied, 479 U.S. 870 (1986); see also Steadman, 280 S.W.3d at 247 (reasoning that evidence is always factually
sufficient when it preponderates in favor of the conviction).








The
dissent seems to contend that there is no evidence Sutton exercised actual
care, custody, control, or management over the handgun because no one actually
saw her with a gun in her hand.  The
dissent demands more than what the law requires.  Contrary to the dissent=s
proposition, although it is undisputed that no one saw Sutton with a gun in her
hands, that does not end the possession inquiry.  See, e.g., James v. State, 264 S.W.3d 215, 219B21 (Tex.
App.CHouston
[1st Dist.] 2008, pet. ref=d)
(applying links analysis and holding that the evidence was legally and
factually sufficient to support conviction for unlawful possession of a firearm
even though no one saw appellant handle the gun).  As we already explained, if the firearm is
not found on the defendant=s person
or is not in the defendant=s
exclusive possession, as in this case, the State must offer additional,
independent facts and circumstances that link the defendant to the firearm to
demonstrate actual care, custody, control, or management of the firearm.  See Bates, 155 S.W.3d
at 216B17; see
also Evans, 202 S.W.3d at 162 (stating that mere
presence is insufficient to establish possession).  The entire analysis above examines the
numerous independent facts and circumstances that link Sutton to the firearm
discovered by the police under the mattress:  it is undisputed that
Sutton was the only female in the house; that she was at the front door when
she yelled, AI have a gun[;] get your ass away
from my truck or I=ll shoot
you@; that
the bed and mattress where the readily accessible gun was found were located
only Ainches@ away
from the front door; and that she was sitting on the mattress underneath which
the gun was found.








Viewing
all the evidence in a neutral light, favoring neither party, we conclude that
the evidence supporting the conviction is not so weak that the jury=s determination is clearly wrong and
manifestly unjust, nor does the conflicting evidence so greatly outweigh the
evidence supporting the conviction that the jury=s
determination is manifestly unjust.  See
Steadman, 280 S.W.3d at 246; Watson, 204 S.W.3d at 414B15,
417.  Accordingly, we hold that the
evidence is factually sufficient to support Sutton=s
conviction.  We overrule the remainder of
Sutton=s first
issue challenging the factual sufficiency of the evidence.

V.  Conclusion

Having
overruled Sutton=s two issues, we affirm the trial
court=s
judgment.

 

 

BILL MEIER

JUSTICE

 

PANEL:  DAUPHINOT, MCCOY, and
MEIER, JJ.

 

DAUPHINOT, J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED:  August 19, 2010

 













 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-120-CR

 

 

KELLIE PARKER SUTTON                                                                 APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

              FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                          DISSENTING OPINION

 

                                                       ------------

I must
respectfully dissent because I cannot follow the majority=s
analysis of a very clear record and because I believe that the majority has not
addressed the questions fundamental to the disposition of this case.

Officer Stepp confirmed that another officer saw Appellant Kellie
Parker Sutton Aat the door naked with no weapon.@








The
majority characterizes the following as illogical:  She did not possess a firearm when she was
naked.  She was naked when she was at the
front door and yelled at the officers. 
Therefore, she did not possess a firearm when she was at the front door
and yelled at the officers. 
Respectfully, the conclusion is logical. 
If Appellant was seen naked at the front door, and no weapon was seen in
her hands when she was naked, is the majority suggesting that the gun was
someplace on her body?

The
majority works too hard to complicate the record.  There is no testimony that anyone saw
Appellant with a firearm on her person. 
Taking the record as it is without rewriting it or skewing it, none of
the police officers saw a firearm on Appellant=s person,
even when they saw her naked.  They did
watch her stand in her doorway and yell, AI have a gun[;] get your ass away from my truck or I=ll shoot you.@

The
issues the majority should address based on this uncomplicated record are:

(1)     If Appellant was the person yelling, would her knowledge that
another person in the house had a gun in his bedroom be sufficient evidence that
Appellant exercised care, custody, and control over that gun?

 

(2)     Does a threat to use a gun constitute the exercise of care,
custody, and control over a firearm?

 

(3)     Is the threat evidence that Appellant knew that that specific
firearm was located in a place to which she had access?

 

(4)     Is following police officers= orders to sit down in someone else=s room by sitting on a bed
where officers later found a firearm evidence that Appellant exercised care,
custody, or control over that firearm or that she knew the firearm was located
under the mattress when the firearm was not visible until officers searched
under the mattress?

 

Because
the majority fails to address the clear issues raised by the record, I
respectfully dissent.








 

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PUBLISH

 

DELIVERED:  August 19, 2010











[1]The officers located the
fugitive hiding in a bathroom.















 [CB1]Majority
by Meier; Dauphinot Dissents