Charles BATES, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–03–00195–CR.

Court of Appeals of Texas, Dallas.

Jan. 13, 2004.

Adam Seidel, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Dallas, for State.

Before Chief Justice THOMAS and Justices JAMES and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

Charles Bates appeals his conviction for unlawful possession of a firearm by a felon. After finding appellant guilty, the trial court found one enhancement allegation true and sentenced appellant to six years' imprisonment and a $1000 fine. On appeal, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

On April 26, 2002, at 11:50 p.m., Dallas police officers Thomas Tompkins and Julio Ortiz were dispatched to Lisa Watts's house. Watts had called 911 to report telephone harassment, that the man harassing her was on his way to her house, and that he had a gun.[1] Tompkins arrived within fifteen minutes of Watts's 911 call, and he saw a minivan stopped in front of the house. Appellant was sitting in the driver's seat of the minivan. When Tompkins stopped near the house, appellant put the minivan into park, got out of the minivan, and walked to the front of it. Because the call sheet indicated appellant had a gun, Tompkins frisked appellant but did not find a gun. Watts was standing by

---

1. The "call sheet" dispatching the officers is not in the record, but its contents were testified to by the officers. Ortiz testified the call sheet stated "the complainant called 911 regarding—regarding harassment over the phone. Somebody was calling her over the phone making threats." Tompkins described the contents of the call sheet at least three different times: (1) "on the call sheet it stated gun possibly involved"; (2) "[d]ue to the call sheet stating gun involved, for officer's safety I did the Terry frisk on him to make sure he didn't have a firearm on his person"; and (3) "[t]he call sheet stated he had a gun."

the front door of the house, and she and appellant were shouting at each other. Tompkins told appellant to sit on the curb while he spoke to Watts.[2] After speaking to Watts, Tompkins took appellant's identification and called to see if he had any outstanding warrants. After confirming appellant had outstanding warrants, he placed appellant under arrest. Tompkins told appellant he was going to search the minivan, and appellant told Tompkins "he didn't think it was right I should look through his vehicle due to it not being his vehicle." Appellant told Tompkins Ella Hester owned the minivan, and appellant gave Tompkins her telephone number. Tompkins called Hester and told her she could pick up the minivan or it would be impounded.

By this time, Ortiz arrived on the scene. Ortiz searched the minivan, and he found a small drawer-like compartment under the front passenger seat. The compartment was "slightly opened." Inside the compartment was a nine-millimeter semi-automatic handgun with eleven rounds in the magazine. Ortiz testified the gun in the compartment was accessible to a person sitting in the driver's seat depending on his height, and Tompkins testified appellant could have reached the gun.

Tompkins testified Hester arrived to pick up her minivan. Tompkins spoke to her briefly, confirmed she owned the minivan, and released it to her. Tompkins did not ask her about the gun.

Hester testified she had loaned appellant her minivan at about 10:00 p.m. that night. She did not own a gun, and she had not seen appellant with a gun. Hester had a boyfriend, Derek Parmon, who made threats to shoot people, but he had not been in the minivan for the preceding two weeks. Hester used the compartment under the passenger seat to "put my junk stuff and perfumes, stuff you don't want in the dashboard. I throw odds and ends in there." Hester said she used the compartment "mostly when I clean it out I put excessive stuff in there." The compartment was typically not latched, and it would "jump out" when the minivan hit a bump.

Hester testified she received a call from the police about midnight telling her to pick up the minivan or it would be impounded. Appellant's sister drove Hester to the location, and without speaking to the officers or appellant, she got in the minivan and drove away.

2. Tompkins testified that Watts was under stress and excitement caused by a startling event when he spoke to her, and what she told him related to the startling event, the predicate facts for admission of hearsay statements under the excited-utterance exception. TEX.R. EVID. 803(2). However, the trial court sustained appellant's hearsay objection to Tompkins's testimony about Watts's statements, explaining:

> [F]rom the testimony I heard, I'm not convinced that whatever excitement she was under had to do with the event that took place, is my concern. That's the reason for my ruling, was that from what I heard she was outside, not locked inside. She and the defendant were engaged in mutual argument. So I'm not convinced the excite-

ment had anything, necessarily, to do with the event that had taken place earlier. It appears they were jawing at each other at that point. It's not your predicate [t]hat concerns me so I'll sustain it.

The trial court excluded Ortiz's and Tompkins's testimony that Watts said appellant had a gun. The trial court also sustained objections to the prosecutor's questions to Tompkins about whether Watts told him appellant owned a firearm, what Watts feared appellant was going to do, what Watts said had happened, and what Watts said when she was under the stress or excitement of the startling event. The State did not appeal these rulings; accordingly, the issue of the correctness of the trial court's rulings is not before us, and we make no decision on that issue.

Appellant testified he borrowed Hester's minivan and went home. He then telephoned Watts and asked her to return the battery charger for his cordless telephone. Watts told appellant the charger did not belong to him, and she refused to give it to him.[3] Appellant told Watts he was coming to her house to pick up the charger, and she told him the police would be waiting for him because she was tired of appellant and his family and because appellant's sister had threatened her. Appellant then drove to Watts's house and knocked on her door. Watts did not open the door, and she told appellant to leave and that the police were coming. As appellant walked back to the minivan, the police arrived. Appellant walked over to the squad car and told Tompkins what was going on, "I told them we were buying a battery charger." Appellant did not have any identification with him, but he told Tompkins his correct name and birth date. Tompkins asked appellant if he had any warrants, and appellant said he did for traffic tickets. Watts then stepped outside and told Tompkins she did not want appellant to go to jail. Tompkins asked appellant if he had anything in the minivan, and appellant told him it did not belong to him and he did not know what was in it. Tompkins asked if he could search the minivan, and appellant told him, "No, I'm—I can't give permission, but I can give you the owner's phone number, and if she said it's okay, it's okay with me." Instead of calling Hester, Tompkins confirmed appellant had warrants, and Ortiz searched the minivan. After Ortiz found the gun, appellant was arrested. The officers asked appellant if the gun was his, and appellant said it was not. Tompkins told Ortiz he could leave, and only appellant and Tompkins were present when Hester and appellant's sister

arrived. Hester got in the van and drove away. Tompkins would not allow appellant's sister to speak to appellant. Appellant denied owning a gun, possessing a gun that night, showing a gun to Watts, or knowing about the gun Ortiz found in the minivan. Appellant admitted having been convicted in 1999 of unlawful possession of a firearm by a felon and sentenced to two years' confinement and a $1500 fine.

The indictment alleged appellant had been convicted in 1993 of unlawful delivery of a controlled substance and that appellant possessed a firearm within five years of his release from confinement for this offense. The parties stipulated to evidence appellant was convicted in 1993 of delivery of a controlled substance and was sentenced to eight years' imprisonment.

## SUFFICIENCY OF THE EVIDENCE

■ In his first and second points of error, appellant contends the evidence is legally and factually insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Young v. State*, 14 S.W.3d 748, 753 (Tex.Crim.App.2000). The standard is the same for both direct and circumstantial evidence cases. *Burden v. State*, 55 S.W.3d 608, 613 (Tex.Crim.App.2001). In analyzing whether the evidence was factually sufficient to support the conviction, we must determine "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of

---

**3.** Appellant also testified Watts "felt" the charger was appellant's and she would give it

to him after she found hers.

guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). In conducting this analysis, the appellate court must defer to the trier of fact's determination concerning the weight given contradictory evidence. *Johnson*, 23 S.W.3d at 8; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997). We must set the verdict aside only if it is so factually insufficient or against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Johnson*, 23 S.W.3d at 11; *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996).

To establish unlawful possession of a firearm by a felon, the State was required to show appellant was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from supervision under community supervision, parole, or mandatory supervision, whichever date is later. TEX. PEN.CODE ANN. § 46.04(a)(1) (Vernon Supp. 2004); *see also Martinez v. State*, 986 S.W.2d 779, 780 (Tex.App.-Dallas 1999, no pet.). " 'Possession' means actual care, custody, control, or management." TEX. PEN.CODE ANN. § 1.07(a)(39) (Vernon Supp. 2004). A person commits a possession offense only if he voluntarily possesses the prohibited item. *See id.* § 6.01(a) (Vernon 2003). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b).

■ In cases involving unlawful possession of a firearm by a felon, we analyze the sufficiency of the evidence under the rules adopted for determining the suffi-

ciency of the evidence in cases of unlawful possession of a controlled substance. *Young v. State*, 752 S.W.2d 137, 140 (Tex. App.-Dallas 1988, pet. ref'd). Thus, the State was required to prove: (1) the accused exercised actual care, control, or custody of the firearm; (2) he was conscious of his connection with it; and (3) he possessed the firearm knowingly or intentionally. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Nguyen v. State*, 54 S.W.3d 49, 52 (Tex.App.-Texarkana 2001, pet. ref'd); *see also Corpus v. State*, 30 S.W.3d 35, 38 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). The State's evidence, which may be either direct or circumstantial, must establish the accused's connection with the firearm was more than just fortuitous. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995).

■ If the firearm is not found on the accused's person or is not in the exclusive possession of the accused, the evidence must affirmatively link the accused to the firearm. *Davis v. State*, 93 S.W.3d 664, 667 (Tex.App.-Texarkana 2002, pet. ref'd). Factors which may establish affirmative links include whether: (1) the contraband was in plain view; (2) the accused was the owner of the car in which the contraband was found; (3) the accused was the driver of the car in which the contraband was found; (4) the accused was in close proximity and had ready access to the contraband; (5) the contraband was found on the same side of the car seat as the accused was sitting; (6) contraband was found on the accused; (7) the defendant attempted to flee; (8) conduct by the accused indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (9) the accused had a special connection or relationship to the contraband; (11) the place where the contraband was found was enclosed; (12) occupants of the automobile gave conflicting statements about relevant

matters; and (13) affirmative statements connect the accused to the contraband, including incriminating statements made by the accused when arrested. *Dixon v. State,* 918 S.W.2d 678, 681 (Tex.App.-Beaumont 1996, no pet.); *Watson v. State,* 861 S.W.2d 410, 414–15 (Tex.App.-Beaumont 1993, pet. ref'd). The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the accused to the contraband. *See Wallace v. State,* 932 S.W.2d 519, 524 (Tex.App.-Tyler 1995, pet. ref'd).

▬ In this case, appellant was the driver and sole occupant of the vehicle, which he had borrowed about two hours before this incident. The gun, found in a partially opened compartment under the front passenger seat, was in close proximity to and accessible to appellant as he sat in the driver's seat. The only other people besides appellant who could have put the gun in the compartment were Hester and Parmon. Hester denied all knowledge of the gun, and she testified Parmon was not in the car during the two weeks preceding appellant's arrest. Hester also testified she kept her perfumes and other "junk stuff" in the compartment and that the compartment would "jump out" whenever she hit a bump. The trial court could rationally conclude from this evidence that if the gun had been in the compartment for the preceding two weeks, she would

have seen it in there.[4] Parmon was not called as a witness.

The evidence further showed Watts had called 911 to report telephone harassment, that the man harassing her was on his way to her house, and that he had a gun. Responding immediately to this call, the police discovered only one man at Watts's residence, appellant, who was seated in a vehicle in front of Watts's residence. Based on conversations the police conducted at the scene, it is undisputed appellant had just arrived at Watts's residence. The 911 call referred to "harassment." Upon their arrival, the police witnessed appellant and Watts yelling at each other. Appellant's verbal confrontation with Watts outside her house around midnight continued even after the police arrived. The call sheet resulting from the 911 call said the man "had a gun," and a gun was subsequently located under the front passenger seat of the vehicle appellant had just driven to Watts's house. After comparing the facts developed at the scene with the 911 call, we conclude the evidence reasonably shows appellant was harassing Watts on the telephone, that he was on his way to her home at the time she called the police, and that he possessed a gun.

Viewing all the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient for the trial court to find beyond a reasonable doubt that appellant had possession of the gun found in the minivan.[5] Accordingly, we hold the

4. Neither the State nor the defense asked Hester when she last looked in the compartment before she loaned the minivan to appellant.

5. The State also argued, "Upon the police's arrival, appellant emerged from his vehicle and walked around to the front of it, fending off any opportunity for them to talk to him while he sat inside the vehicle," conduct the State labeled "furtive behavior." The State, however, does not explain how such conduct

could be construed as "furtive" and does not cite any authority to support its conclusion. Under the circumstances of this case, we are not inclined to view appellant's conduct of getting out of the minivan and walking to the front of it as "furtive behavior" or any indication of his guilt. The State also argues appellant's refusal to consent to the search of the vehicle and appellant's prior conviction for unlawful possession of a firearm by a felon are evidence of his guilt in this case. The State cites no authority in support of

evidence is legally sufficient to support appellant's conviction. We overrule appellant's first point of error.

In arguing the evidence is factually insufficient, appellant relies on *Nguyen v. State*, 54 S.W.3d 49 (Tex.App.-Texarkana 2001, pet. ref'd). In that case, a peace officer pursued a speeding vehicle. *Id.* at 51. When the vehicle did not immediately pull over, the officer shined his spotlight on the back window of the car, and he saw the appellant, who was sitting in the front passenger seat, reach between the two front seats toward the back seat. *Id.* The officer could not tell if the appellant was holding a gun. *Id.* at 52. The vehicle then pulled over. *Id.* at 51. When the officer approached the vehicle, the appellant appeared to be asleep, and the driver appeared to wake him up to get the proof of insurance. *Id.* The officer obtained consent to search the vehicle, which belonged to the appellant's brother, and the officer found a handgun completely hidden under a removable rear seat behind the driver's seat, which had to be lifted to place the gun beneath it. *Id.* at 52. The officer testified it would have been more difficult for the appellant to lift the rear seat and place the gun beneath it while seated in the front seat than it was for the officer to lift the rear seat while standing next to it. *Id.* The gun had been stolen during a

burglary of the Arlington home of a Vietnamese family by five Asian males. *Id.* The appellant lived in Arlington and was also Vietnamese. *Id.* The Texarkana court held the evidence was factually insufficient to support the appellant's conviction because the driver did not try to flee, the car did not belong to the appellant, the officer did not see the gun in the appellant's hand, and no usable fingerprints could be lifted from the gun.[6]

This case is distinguishable from *Nguyen*. In *Nguyen*, the car in question had two occupants, the driver and Nguyen, the passenger; in the instant case, appellant was the sole occupant. In *Nguyen*, the gun was found under a removable rear seat directly behind the driver's seat; in the instant case, the gun was found in a "slightly opened" compartment accessible to appellant. In *Nguyen*, it was impossible to determine whether the appellant had just put the gun under the seat or whether the gun had been left hidden under the seat by the appellant's brother or someone else. In this case, a rational trier of fact judging the credibility of the witnesses could conclude appellant must have put the gun in the compartment because: (a) Hester testified she had no knowledge of the gun; (b) Parmon was the only other person the record shows who could have

these arguments. Appellant's assertion of his Fourth Amendment rights and proof of his prior conviction for the same offense three years earlier are not evidence of his guilt in this case. TEX.R. EVID. 404(b) (evidence of other crimes is not admissible to prove character and to show action in conformity therewith); TEX.R. EVID. 609 (prior conviction admissible for impeachment purposes); *Shipman v. State*, 604 S.W.2d 182, 184 (Tex. Crim.App. [Panel Op.] 1980) (two-year-old prior conviction for DWI "not legally relevant" in defendant's current DWI trial); *Adams v. State*, 862 S.W.2d 139, 147 (Tex. App.-San Antonio 1993, pet. ref'd) (impeachment evidence has no probative value and cannot be considered as substantive evi-

dence); *see also Reeves v. State*, 969 S.W.2d 471, 493 (Tex.App.-Waco 1998, pet. ref'd) (refusal of consent to search is not admissible as evidence of guilt); *Powell v. State*, 660 S.W.2d 842, 845 (Tex.App.-El Paso 1983, no pet.) (same). Appellant's prior conviction of possession of a firearm by a felon was not alleged in the indictment as his prior felony conviction. Thus, it was not an element of the offense charged and is not evidence of his guilt.

6. The court of appeals, however, determined the evidence was legally sufficient to prove possession of a firearm by a felon.

put the gun in the compartment, and he had not been in the minivan for the preceding two weeks; and (c) because Hester put her "junk stuff and perfumes" and items she did not want on the dashboard in the compartment, and because the compartment would "jump out" whenever the minivan struck a bump, Hester would have been aware of the gun's presence during the two weeks between Parmon's access to the minivan and her loaning it to appellant. Finally, in *Nguyen*, there was no evidence the appellant had a gun; in this case, Tompkins testified, "The call sheet stated he had a gun."

After reviewing all the evidence in a neutral light, we conclude the proof of appellant's guilt is not so obviously weak as to undermine confidence in the trial court's determination, nor is the proof of appellant's guilt greatly outweighed by contrary proof. Appellant's conviction is neither against the great weight and preponderance of the evidence nor clearly wrong and manifestly unjust. Accordingly, we hold the evidence is factually sufficient to support appellant's conviction. We overrule appellant's second point of error.

We affirm the trial court's judgment.

THOMAS, Chief Justice concurring without opinion.

JAMES, J. dissenting.

Dissenting Opinion by Justice JAMES.

I agree the majority has correctly presented the law applicable to the offense of unlawful possession of a firearm by a felon. I also agree the majority has applied the appropriate standard of review. However, I disagree with the majority's conclusion that the evidence is legally sufficient to support appellant's conviction. Specifically, the evidence is insufficient for the trial court, sitting as the finder of fact, to find beyond a reasonable doubt that appellant had possession of the gun found in the minivan, an essential element of the offense charged. Accordingly, I respectfully dissent.

As the majority has posited, in cases charging unlawful possession of a firearm, we analyze the sufficiency of the evidence under the rules for determining the sufficiency of the evidence of unlawful possession of a controlled substance. *See Young v. State*, 752 S.W.2d 137, 140 (Tex.App.-Dallas 1988, pet. ref'd). The State must prove: (1) the accused exercised actual care, control, or custody of the firearm; (2) he was conscious of his connection with it; and (3) he possessed the firearm knowingly or intentionally. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Nguyen v. State*, 54 S.W.3d 49, 52 (Tex.App.-Texarkana 2001, pet. ref'd). The State's evidence, either direct or circumstantial, must establish the accused's connection with the firearm was more than fortuitous by proving beyond a reasonable doubt the accused knowingly and intentionally possessed the weapon. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995).

Where, as in this case, there is no direct evidence the weapon was found on the accused's person or was in his exclusive possession, the circumstantial evidence must affirmatively link the accused to the firearm. *See id.* The necessity of proving affirmative links between the accused and the firearm is mainly to establish his knowledge and intent to possess the weapon. *See id.* Factors which may establish affirmative links to the accused include whether: (1) the firearm was in plain view; (2) the accused was the owner of the vehicle in which the firearm was found; (3) the accused was the driver of the vehicle in which the firearm was found; (4) the accused was in proximity to and had access to the firearm; (5) the firearm was found

on the same side of the vehicle as where the accused was sitting; (6) the firearm was found on the accused's person; (7) the accused attempted to flee; (8) conduct of the accused indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (9) the accused had a special connection or relationship to the firearm; (10) the place where the firearm was found was enclosed; (11) occupants of the automobile gave conflicting statements about relevant matters; and (12) affirmative statements connect the accused to the firearm, including incriminating statements made by the accused when arrested. *See Dixon v. State,* 918 S.W.2d 678, 681 (Tex.App.-Beaumont 1996, no pet.). "Affirmative link" is only a shorthand expression of what the State must prove to establish that a person possessed some kind of contraband "knowingly or intentionally." *See Brown,* 911 S.W.2d at 747. The evidence must affirmatively link the defendant to the thing he is alleged to have possessed. *Id.*

In this case the evidence is undisputed the firearm was found in a compartment under the passenger seat of a minivan owned by Hester. The arresting officer testified appellant was seated in the driver's seat and was the only occupant of the vehicle. Appellant did not attempt to flee when the officer drove up. Appellant declined to give the officer permission to search the vehicle saying it was not his, but he gave the officer Hester's phone number to call for permission. The firearm was not examined for fingerprints of appellant or others. Appellant told the officer the gun was not his and he did not know it was in the minivan. Based on these facts, I would conclude the State failed to adduce any evidence of affirmative links set forth in at least nine of the twelve affirmative links the majority cites from *Dixon. See id.* However, I recognize the number of factors present is not

as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the accused to the contraband. *See Wallace v. State,* 932 S.W.2d 519, 520 (Tex.App.-Tyler 1995, pet. ref'd). Thus an analysis of the evidence relevant to these three remaining factors is required.

The State presented evidence the automobile appellant was driving was owned by Hester. Appellant had driven the car less than two hours when he was arrested. According to the arresting officers, Lisa Watts reported appellant was harassing her with threats and was coming to her residence. She told the dispatcher appellant was five minutes from her and had a gun. Within fifteen minutes of Watts's call to the dispatcher, the arresting officer arrived at Watts's house and saw appellant seated in the driver's seat of Hester's parked minivan. This testimony indicates appellant had been in Hester's automobile for less than half an hour when he came under surveillance of the police. This short period of time of being the driver of the vehicle, no more than the fifteen minutes after Watts's call, implies appellant had no more than limited or temporary control of the minivan. I would conclude this factor does not provide a strong affirmative link between appellant and the firearm.

The police searched the minivan, and the firearm was found in a compartment under the passenger seat. The officer testified appellant, by "lunging," could have reached the weapon in the "slightly opened" compartment under the passenger seat from his position in the driver's seat. Again, this evidence fails to provide a strong affirmative link based on appellant's proximity to and the accessibility of the firearm.

The arresting officer testified appellant declined his request to consent to a search of the minivan, and in the officer's opinion this indicated appellant had something in the vehicle he wanted to conceal. However, appellant explained he could not give consent because the automobile belonged to someone else. He gave the officer Hester's phone number and said to call her for permission. To the extent the trial court sitting as the fact finder may have considered this evidence to be conduct indicating a consciousness of guilt, I conclude it is, at best, a very weak affirmative link, a conclusion shared somewhat by the majority.

In reviewing a challenge to the legal sufficiency of the evidence, we must review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Young v. State*, 14 S.W.3d 748, 753 (Tex.Crim.App.2000). The burden of proof is on the prosecution to prove each element of the offense beyond a reasonable doubt. *Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.-Dallas 1991, pet. ref'd). As I have stated at the outset, the State was required to prove: (1) the accused exercised actual care, control, or custody of the firearm; (2) he was conscious of his connection with it; and (3) he possessed the firearm knowingly or intentionally. *Cude*, 716 S.W.2d at 47; *Nguyen*, 54 S.W.3d at 52.

After examining the record for any evidence of an affirmative link tending to prove that the appellant was actually aware of his possession of a firearm, I conclude the State's evidence is so weak a rational trier of fact could not have found the essential elements of the charged offense beyond a reasonable doubt. Confidence in the trial court's determination of appellant's guilt is undermined because the evidence is so weak it fails to prove beyond a reasonable doubt that the appellant knowingly or intentionally possessed the firearm and fails to overcome the presumption of the appellant's innocence. Accordingly, the evidence is legally insufficient and the judgment should be reversed. *See Brown*, 911 S.W.2d at 746.

The majority asserts appellant must have placed the gun in the minivan because "(t)he only other people who could have put the gun in the compartment were Hester and Parmon." Hester denied all knowledge of the gun and said Parmon had not used the car in the two weeks prior to appellant's arrest. The record, however, does not support the majority's conclusion that Parmon or someone else could not have put the gun in the compartment. There is no evidence Hester did not allow anyone other than the appellant to use her minivan before the time appellant was arrested.

The majority concludes that the trial court could have rationally determined Hester would have seen the gun if it had been in the compartment before appellant drove it. This, however, is not supported by any evidence in the record. There is no evidence Hester had opened the compartment in the intervening two-week period following Parmon's use of the minivan. Accordingly, I conclude this is no evidence the appellant knowingly or intentionally possessed the firearm.

The majority details the evidence of Watts's 911 call reporting the appellant was on his way to her house and had a gun. From this the majority concludes the evidence reasonably shows appellant had a gun. I respectfully disagree. This evidence would be supportive of showing the officer had a right to search appellant before arresting him, but it is not probative of appellant's knowingly and intention-

ally possessing the firearm. Indeed, this evidence fails to supply any affirmative link to the appellant.

The Fourteenth Amendment to the Constitution protects an accused's right to a fair trial; the presumption of innocence is a basic component of that right. *See* U.S. Const. amend. XIV; Tex.Code Crim. Proc. Ann. Art. 38.03 (Vernon Supp.2004). Federal due process holds that a conviction is unconstitutional unless after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential element of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 318, 99 S.Ct. 2781; *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex. Crim.App.1992).

In summary, I would conclude the evidence of appellant's connection to the firearm is so weak as to show no more than appellant had a fortuitous relation to the firearm. As such, the State failed to prove the essential elements of appellant's voluntary possession of the firearm beyond a reasonable doubt. To conclude otherwise is to allow conviction for unlawful possession of a firearm solely on evidence the defendant was driving an automobile in which a firearm was found under the passenger seat. Such a conclusion vitiates the constitutionally protected presumption of innocence every defendant enjoys by allowing the State to prove possession by sparse evidence that falls far short of overcoming that presumption.

Because I would reverse and enter judgment of acquittal, I respectfully dissent.