

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00483-CR

**HAROLD ALEXANDER JACKSON,**

Appellant

**v.**

**THE STATE OF TEXAS,**

Appellee

**From the 87th District Court**
**Freestone County, Texas**
**Trial Court No. 11-067-CR**

## MEMORANDUM OPINION

In three issues, appellant, Harold Alexander Jackson, challenges his conviction

for unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL

CODE ANN. § 46.04(a), (e) (West 2011). We affirm.

### I. BACKGROUND

In the instant case, Jackson was charged by indictment with unlawful possession

of a firearm by a felon. Included in the indictment were enhancement paragraphs

referencing Jackson's prior convictions for felony burglary of a building and felony

possession of a controlled substance. At trial, Jackson pleaded "true" to the enhancement paragraph referencing his conviction for felony possession of a controlled substance. At the conclusion of the trial, the jury found Jackson guilty of the charged offense. The trial court subsequently sentenced Jackson to eight years' confinement, suspended the sentence, and placed Jackson on community supervision for eight years. In addition, the trial court ordered that Jackson serve 180 days in the county jail and participate in 192 hours of community service as conditions of his community supervision. This appeal followed.

## II. THE JURY CHARGE

In his second and third issues, Jackson asserts that he was egregiously harmed by the trial court's failure to properly define: (1) "possession" with regard to the issue of voluntariness; and (2) "intentionally" and "knowingly" in the jury charge.

### A. Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm

and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Jackson admits that he did not object to the jury charge; thus, he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B. Discussion**

Here, the charge defined possession as involving the "care, custody, control, or management of property." This language tracks section 1.07(a)(39) of the penal code. *See* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2013). The charge also provided complete statutory definitions for "intentionally" and "knowingly." *See id.* § 6.03(a)-(b) (West 2011). Specifically, the definitions section of the charge stated the following:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The application portion of the charge provided:

> Now, if you find from the evidence beyond a reasonable doubt on or about the 16th day of December, 2010 that the defendant, HAROLD ALEXANDER JACKSON, having been previously convicted of a felony on the 15th day of January, 1992, in cause number 16,637 in the 86th District Court of Kaufman County, Texas in a case on the docket of said Court, and entitled The State of Texas vs[.] Harold Alexander Jackson, did then and there intentionally and knowingly possess a firearm after the fifth anniversary of the defendant's release from confinement following conviction of said felony at a location other than the premises at which the defendant lived, to wit: Freestone County Road 240, Freestone County, Texas, then you will find the defendant guilty of the offense of unlawful possession of a firearm as charged in the indictment.

Jackson complains that the charge should have included language contained in section 6.01(b) of the penal code, which provides that possession is voluntary if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the things for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b) (West 2011). Jackson also contends that the charge's definitions of "intentionally" and "knowingly" were not appropriately tailored to the offense. More specifically, Jackson argues that these definitions should have been limited to the "nature-of-the conduct" and the "circumstances-surrounding-the conduct" aspects of the requisite culpable mental states.

Assuming, without deciding, that it was error for the trial court to not include a 6.01(b) instruction as to voluntariness and to not limit the definitions of "intentionally" and knowingly," we cannot say that Jackson was egregiously harmed. John Thorn, a Game Warden with the Texas Parks and Wildlife Department, testified that he received a call from Charles Meyers about "road hunters" by the Plum farm near FM 489 and

County Road 240 in Freestone County, Texas. Warden Thorn was told that the "road hunters" had positioned their truck sideways in the road with its headlights shining out in the field. When he arrived at the scene, Warden Thorn observed two of the occupants of the truck standing outside with two of their rifles placed on the hood of a patrol car. Warden Thorn inspected the truck and saw that Jackson was still sitting in the passenger's seat. The occupants of the truck denied that there were any more guns in the truck. However, after Jackson exited the vehicle, Warden Thorn noticed the "butt of a rifle that was between the door and the passenger, the right, the front passenger seat that was stopped was upfront and the barrel was pointing back." The rifle was a .270-caliber Remington Model 710; however, the removable magazine was not present with the rifle.

Law enforcement at the scene later found a magazine for a .270-caliber Remington Model 710 in Jackson's jacket pocket. Inside the magazine was "one Harley brand .270 loaded cartridge . . . ." A loaded .308 round was also found in the floorboard on the passenger side, between the front and back seat. Scott Pedford, one of the occupants of the truck, testified that, when law enforcement arrived, two rifles were found in the floorboard of the truck. Warden Thorn explained that these two rifles, in particular, were accessible to "[a]nybody in the car." Pedford also admitted that Jackson knew there were guns in the truck that were intended to be used for hunting.

In his closing argument, defense counsel argued that the evidence did not demonstrate that Jackson was in possession of a firearm. Defense counsel emphasized that Jackson did not own the guns and that Pedford had tried to hide the rifles before

the police arrived. In essence, defense counsel asserted that Jackson was not guilty of the charged offense because he was merely in the vicinity of a gun.

As noted above, in determining the actual degree of harm, we examine the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the arguments of counsel, and other relevant information revealed by the record of the trial as a whole. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. Based on our review of the entire record, we do not believe that the purported error affected the very basis of the case, deprived Jackson of a valuable right, or vitally affected his defensive theory. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. There was ample evidence demonstrating that Jackson's connection to the firearms was not merely fortuitous, and the jury could reasonably infer that Jackson exercised care, custody, control, or management over the firearms voluntarily. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *see also Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (stating that a jury may infer intent or knowledge from any facts that tend to prove its existence, including the acts, words, and conduct of the accused).

Moreover, the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions of "intentionally" and "knowingly." *See Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995) (concluding, in a capital-murder case, that it was error for the trial court to not limit additional language concerning the culpable mental state to proving the "conduct element" of the underlying offense; however, "[r]eferring back to the definitions of

culpable mental states, it is obvious that the 'result of conduct' and cause the result language are the applicable portions of the full code definitions. We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of the culpable mental states to proving the conduct element of the underlying offense."); *see also Fields v. State*, 966 S.W.2d 736, 730-40 (Tex. App.—San Antonio 1998), *rev'd on other grounds*, 1 S.W.3d 687 (Tex. Crim. App. 1999) (concluding that the failure to limit mental states constitutes error; however, the error was harmless). Accordingly, we cannot say that Jackson was egregiously harmed by the charge, as presented. *See Olivas*, 202 S.W.3d at 144; *see also Almanza*, 686 S.W.2d at 171. We therefore overrule Jackson's second and third issues.

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Jackson contends that the evidence is insufficient to establish that he intentionally, knowingly, or voluntarily possessed a firearm. We disagree.

### A. Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to

draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

To prove unlawful possession of a firearm by a felon, the State is required to prove that the person possessed a firearm: (1) "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever is later"; or (2) after the period described by subdivision one, at any location other than the premises at which the person lives. TEX. PENAL CODE ANN. § 46.04(a). As noted above, the penal code defines possession as "actual care, custody, control, or management." *Id.* § 1.07(a)(39). A person commits a possession offense only if he voluntarily possesses the prohibited item. *Id.* § 6.01(a) (West 2011). Possession is voluntary if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the things for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b).

The State must show: (1) that the accused exercised actual care, custody, control, or management over the firearm; (2) that he was conscious of his connection with it; and (3) that he possessed the firearm knowingly or intentionally. *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.); *Smith v. State*, 118 S.W.3d 838, 841 (Tex. App.—Texarkana 2003, no pet.). The State's evidence may be either direct or circumstantial. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The State does not have to prove that the accused had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction. *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd) (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986)).

If the firearm is not found on the defendant's person or is not seen in the defendant's exclusive care, custody, control, or management, the State must offer additional, independent facts and circumstances that link the defendant to the firearm. *Sutton v. State*, 328 S.W.3d 73, 76 (Tex. App.—Fort Worth 2010, no pet.) (citing *Villarreal v. State*, Nos. 2-07-329-CR, 2-07-330-CR, 2009 Tex. App. LEXIS 1823, at **3-4 (Tex. App.—Fort Worth Mar. 12, 2009, pet. ref'd) (mem. op., not designated for publication) ("The . . . links doctrine applies to the possession of firearms.")); *see Bates*, 155 S.W.3d at 216-17. The purpose of linking the accused to the firearm is to protect an innocent bystander from conviction solely on his fortuitous proximity to a firearm. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *see also Allen v. State*, 249 S.W.3d 680, 695 (Tex. App.—Austin 2008, no pet.) ("Proof of mere proximity to contraband is insufficient to establish actual constructive possession or the element of knowledge. Close proximity to the contraband, even when coupled with mere presence at the place where the contraband is found, do not together justify a finding of knowing possession of the contraband.").

In determining whether sufficient links exist, an appellate court examines factors, such as whether the defendant owned the premises where the firearm was found, whether the firearm was in plain view, whether the defendant made incriminating statements, whether the defendant was in close proximity to the firearm and had ready access to it, whether the defendant attempted to flee, whether the defendant's conduct indicated a consciousness of guilt, whether the defendant had a special connection to the firearm, and whether the firearm was found in an enclosed space. *Smith*, 176 S.W.3d

at 916; *Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.). It is the logical force of the factors, not the number of factors present, that determine whether the elements of the offense have been established. *See Smith*, 176 S.W.3d at 916.

### B. Discussion

As we explained in our analysis of Jackson's jury-charge issues, Warden Thorn received a call that "road hunters" had positioned their truck sideways in the road with headlights shining out in the field. When he arrived, Warden Thorn observed two occupants, including Pedford, standing outside the truck with two rifles that had been discovered inside the truck and subsequently placed on top of a patrol car. Warden Thorn also saw Jackson inside the truck in the passenger's seat. The occupants of the truck denied that they had any other guns in their possession. However, once Jackson exited the vehicle, Warden Thorn observed a .270-caliber Remington Model 710 located between the door and seat on the passenger's side. The rifle's magazine was missing.

Law enforcement later found the missing magazine for the Remington Model 710 rifle inside Jackson's jacket pocket; the magazine contained one round. A loaded .308 round was also found in the floorboard on the passenger side, between the front and back seat. Pedford testified that the two rifles initially confiscated by law enforcement were located in the floorboard of the truck—an enclosed space. Warden Thorn explained that these two rifles in particular were accessible to "[a]nybody in the car." Pedford later admitted that Jackson knew there were guns in truck that were intended to be used for hunting. Warden Thorn also testified that, at the time of trial, none of the occupants of the truck had claimed ownership of the rifle found in Jackson's proximity.

Nevertheless, Pedford, Jackson's friend for more than ten years, claimed ownership of the rifle at trial. Pedford also denied handing Jackson the magazine from the rifle; instead, he speculated that the magazine "had to be on the floor."

Based on our review of the record, there was ample evidence demonstrating that Jackson's connection to the firearms was not merely fortuitous, and the jury could reasonably infer that Jackson exercised care, custody, control, or management over the firearms voluntarily. *See Poindexter*, 153 S.W.3d at 406; *see also Hart*, 89 S.W.3d at 64. Moreover, based on the logical force of the factors articulated in *Smith* and *Dixon*, we conclude that the elements of the offense—unlawful possession of a firearm by a felon—have been established. *See Smith*, 176 S.W.3d at 916; *Dixon*, 918 S.W.3d at 681. And to the extent that Pedford's testimony created conflicts in the evidence, we note that it is within the discretion of the factfinder—the jury, here—to resolve any conflicts in the testimony, and we are to defer to the jury's resolution of such conflicts. *See Jackson*, 443 U.S. at 326, 99 S. Ct. 2792-93; *see also Chambers*, 805 S.W.2d at 461. Clearly, by convicting Jackson of the charged offense, the jury resolved any conflicts in the evidence against Jackson. We therefore conclude that the record contains sufficient evidence to support Jackson's conviction for unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894; *Bates*, 155 S.W.3d at 216; *Smith*, 118 S.W.3d at 841. We overrule Jackson's first issue.

## IV. CONCLUSION

Having overruled all of Jackson's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed March 27, 2014
Do not publish
[CR25]