

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-19-00406-CR

CHARLES HARVEY BRYANT, APPELLANT

V.

THE STATE OF TEXAS

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 12205, Honorable Dan Mike Bird, Presiding

December 23, 2020

MEMORANDUM OPINION

Before PIRTLE and PARKER and DOSS, JJ.

A jury found appellant, Charles Harvey Bryant, guilty of the offense of unlawful possession of a firearm by felon.[1]  Finding two prior felony enhancement allegations in the indictment to be true, the jury sentenced appellant to seventy-five years' imprisonment

---

[1] *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (West Supp. 2020).  The offense is a third-degree felony if the person possesses a firearm after conviction of a felony and before the fifth anniversary of the person's release from confinement following conviction of the felony.  *See id.* § 46.04(e).

in the Institutional Division of the Texas Department of Criminal Justice.[2]  Through two issues, appellant challenges the trial court's denial of his motion to disqualify the district attorney's office and the sufficiency of the evidence to support his conviction.  We affirm the judgment of the trial court.

## Background

In July of 2019, appellant was indicted for unlawfully possessing a firearm on May 20, 2017, a third-degree felony.  Before voir dire, appellant moved to disqualify the district attorney's office on the grounds that the assistant district attorney, Jonathan Whitsitt, had represented appellant on two prior felony convictions alleged in the indictment for failure to comply with sex offender registration requirements (Count I and Count II).  One conviction was an element of the offense and the other conviction was one of two convictions used in the enhancement paragraphs in the indictment.  Following a hearing on the motion, the trial court denied appellant's motion.

Appellant stipulated to the felony conviction used as an element of the offense and agreed to a reading of the indictment that did not inform the jury of the nature of the conviction.[3]

At trial, witness David Favors testified that he has known appellant all his life.  Detective Mickey Allen with the Vernon Police Department interviewed Favors concerning an interaction that Favors had with appellant a couple of days before May 20, 2017.  On

---

[2] *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2019).

[3] Appellant stipulated that he was previously finally convicted of a felony and was released from confinement for the felony on May 17, 2016.

the afternoon in question, Favors was in the front yard at his girlfriend's apartment playing football with his grandchildren when appellant drove up. Appellant asked Favors if he knew anybody who wanted to buy some "merchandise." Favors replied, "no," but then requested, "well, let me see what you got." Appellant showed Favors several guns in a blanket in the backseat of his car. Favors saw four weapons: a 9mm caliber pistol, a .45 caliber pistol, a pump shotgun with a wooden stock, and a bolt-action hunting rifle. Favors looked at the guns for five or ten minutes, but he decided not to purchase any of them. Appellant did not tell Favors the calibers of the guns, but Favors testified he "know[s] weapons" because he served nine years in the military.

Favors identified four guns as demonstrative exhibits and testified that they were similar to the ones that appellant displayed in the back seat of his car. The guns were "whole, not broken." Appellant described the guns to Favors as "heat," which Favors said means "guns, fire." According to Favors, the guns he observed in the blanket were real guns, and not BB guns, airsoft guns, or play guns. Favors could not say if the guns that appellant had were operational because Favors did not handle them. During cross-examination, appellant's counsel showed Favors a gun and asked him if he could tell what kind of a gun it was. Favors testified that it "[l]ooks like a .9 Glock handgun or a .45." After counsel showed Favors the definition of a firearm, Favors acknowledged that the gun counsel showed him appeared to meet the definition of a firearm.[4] When appellant's counsel showed Favors the clip and the barrel, and allowed him to hold it,

---

[4] From the record, it appears that defense counsel showed Favors the definition of a firearm set forth in section 46.01(3) of the Texas Penal Code.

3

Favors testified that it was a BB gun. On re-direct, Favors testified that he could tell the difference between the barrel of a BB gun and a real gun.

Lacresha Shelton testified that she has known appellant since childhood. Shelton explained that on May 19, 2017, she saw appellant at the home of a mutual friend, Paula Cook. Shelton purchased an air conditioner from Cook, and appellant loaded the air conditioner in Shelton's car. Appellant helped Shelton install the air conditioner at her home. While he was installing the air conditioner, appellant asked Shelton if she knew anyone who wanted to buy a gun. According to Shelton, appellant had a backpack on his shoulder; when he asked her if she knew anyone who wanted to buy a gun, appellant brought the backpack off his shoulder. Shelton told appellant, "I don't know nothing about no guns, ask my uncle, Uncle Jay." Appellant returned the backpack to his shoulder and finished installing the air conditioner before leaving. Appellant did not show Shelton a gun and he did not tell Shelton he had a gun. Shelton stated that appellant was known for facilitating transactions between people who wanted to sell and purchase goods.

Donna Brown testified that she was in bed when appellant unexpectedly knocked on her door at 2:00 a.m. on May 20, 2017. After identifying himself, appellant asked Brown if she was interested in buying a gun. Appellant told her that he needed some "fast cash to go out of town." Appellant told Brown that he had the gun in the car and that he could show it to her. Brown did not see a gun and does not know if appellant actually had a gun.

The jury found appellant guilty of the offense of unlawful possession of a firearm by a felon. At the punishment phase, appellant pled not true to two punishment-

4

enhancing allegations. The jury found the allegations true and assessed appellant's punishment at seventy-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

Appellant presents two issues by his appeal. In his first issue, appellant contends that the trial court erred when it failed to disqualify the district attorney's office. By his second issue, appellant challenges the sufficiency of the evidence to support his conviction.

Law and Analysis

Disqualification of District Attorney

The standard of review for disqualification of the prosecutor by the trial court is whether the court abused its discretion. *Landers v. State*, 256 S.W.3d 295, 303 (Tex. Crim. App. 2008). The trial court abuses its discretion only when the decision lies outside the zone of reasonable disagreement. *Id.*; *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

"A trial court has limited authority to disqualify an elected district attorney and [his] staff from the prosecution of a criminal case." *Buntion v. State,* 482 S.W.3d 58, 76 (Tex. Crim. App. 2016). "The office of a district attorney is constitutionally created and protected; thus, the district attorney's authority 'cannot be abridged or taken away.'" *Id.* (quoting *Landers*, 256 S.W.3d at 303-04). The district attorney "shall represent the State in all criminal cases in the district courts of his district and in appeals therefrom, except in cases where he has been, before his election, employed adversely." TEX. CODE CRIM.

5

PROC. ANN. art. 2.01 (West 2005). Even with this express basis for disqualification, it has been held that a trial court's authority to disqualify a district attorney in a particular case requires proof that the district attorney has a conflict of interest that rises to the level of a due process violation. *Landers,* 256 S.W.3d at 304; *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994). A due process violation arises as a matter of law when a prosecuting attorney has formerly represented the defendant in the same criminal matter as that currently being prosecuted. *Landers,* 256 S.W.3d at 304. A due process violation may arise if a prosecuting attorney has previously represented the defendant in a different matter but only if the defendant can prove that he would be actually prejudiced by the prosecutor's prior representation. *Id.* at 304-05. Actual prejudice requires proof that the prosecutor has previously personally represented the defendant in a substantially related matter, and that he obtained confidential information by virtue of that representation which may be used to the defendant's disadvantage. *Id.* at 305. In most instances, to establish a conflict of interest that rises to the level of a due process violation, the district attorney must be shown to have previously represented the defendant in the current case. *In re Simon,* No. 03-16-00090-CV, 2016 Tex. App. LEXIS 6562, at *17 (Tex. App.—Austin June 22, 2016, orig. proceeding) (mem. op.); *see Buntion,* 482 S.W.3d at 77 ("Appellant has not alleged, and we have not found, that any actual conflict existed. District Attorney Lykos did not previously represent appellant, nor did any of her staff. Thus, appellant fails to show any conflict which this Court has previously found as grounds for disqualification.").

In the present case, appellant urged in his oral motion that the district attorney's office should be disqualified because assistant district attorney Whitsitt represented

6

appellant in two cases which resulted in appellant's conviction for failure to comply with sex offender registration requirements. The State used one of these convictions in the present indictment as the underlying felony and the other conviction was used for enhancement purposes in the punishment phase of appellant's trial. Appellant contends that this "shows that Mr. Whitsitt had a personal interest in the case and by the [t]rial [c]ourt allowing him to further prosecute [a]ppellant diminishes the faith in the fairness of the criminal justice system in general."

At the hearing on the motion, appellant's counsel argued that if appellant testified, Whitsitt could cross-examine appellant and potentially violate the attorney-client privilege. Appellant did not articulate any specific actual prejudice, nor did he demonstrate that Whitsitt had obtained any confidential information in the previous representation that could be used to appellant's disadvantage in this case. The State informed the trial court that it was using information about the previous convictions that is publicly available: the judgments of conviction. Thus, the arguments at the motion to disqualify hearing do not bear out a conflict that rises to the level of a due process violation.

While appellant urges that Whitsitt has a personal interest in the case, appellant fails to demonstrate what the personal interest is, other than stating that it exists. We reject appellant's contention that he has shown a personal interest that raises constitutional questions. Mere allegations of personal interest are insufficient to justify disqualification here. *State ex rel. Hilbig v. McDonald*, 877 S.W.2d 469, 471-72 (Tex. App.—San Antonio 1994, orig. proceeding) ("Mere allegations of wrongdoing will not

7

suffice" to warrant disqualification). Accordingly, the trial court properly exercised its discretion in denying appellant's motion to disqualify. We overrule appellant's first issue.

Sufficiency of the Evidence of Unlawful Possession of a Firearm by a Felon

The standard we apply in determining whether the evidence is sufficient to support a conviction is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, we consider all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Queeman v. State,* 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). Sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State,* 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

To establish the offense of unlawful possession of a firearm by a felon, the State was required to prove, beyond a reasonable doubt, that appellant was previously convicted of a felony offense and that he possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from supervision, whichever date is later. TEX. PENAL CODE ANN. §§ 46.04(a)(1), 46.04(e).

"Firearm" means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. TEX. PENAL CODE ANN. § 46.01(3) (West Supp. 2020). "Possession" means actual care, custody, control, or management. TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2020); *Greer v. State*, 436 S.W.3d 1, 5 (Tex. App.— Waco 2014, no pet.). A person commits a possession offense only if he voluntarily possesses the prohibited item. TEX. PENAL CODE ANN. § 6.01(a) (West 2011). Even if a firearm is not found on the defendant's person or is not seen in the defendant's exclusive care, custody, control, or management, the State can still prove possession by offering additional, independent facts and circumstances that link the defendant to the firearm. *Bates v. State*, 155 S.W.3d 212, 216-17 (Tex. App.—Dallas 2004, no pet.).

In this case, appellant stipulated that he was convicted of a felony offense on October 20, 2014, in cause number 11,933. Appellant stipulated that he was released from confinement for the felony conviction on May 17, 2016. Appellant's stipulation relieved the State of its burden to prove that appellant had been previously convicted of a felony and that, on the date of his alleged possession of a firearm, five years had not passed since appellant's release from confinement for that conviction.

At trial, the State presented testimony that appellant possessed four firearms and initiated conversations with Favors, Shelton, and Brown about selling guns to them or someone they knew. The evidence shows that Favors had familiarity with guns and believed that appellant wanted to sell someone a gun. Favors described in detail the four guns that appellant showed him, including the guns' type, shape, and color. He testified

9

that the guns were firearms according to the legal definition in Texas. Further, Favors testified that appellant was the driver and the sole occupant of the vehicle in which he saw the guns. The jury was free to believe or disbelieve any or all of this testimony. Although Favors initially incorrectly identified the BB gun that defense counsel offered as a firearm, Favors was quick to correct his misidentification as soon as defense counsel allowed Favors to hold the BB gun. A jury is in the best position to evaluate the credibility of witnesses, and we are required to afford "due deference" to the jury's determinations. *Davis v. State*, No. 07-08-0024-CR, 2009 Tex. App. LEXIS 1503, at *9-10 (Tex. App.—Amarillo Mar. 6, 2009, no pet.) (mem. op.).

We find that the evidence was sufficient for the jury to have found that appellant was in possession of the firearms. The guns were in a blanket in the backseat of appellant's car, appellant uncovered the guns to show them to Favors, appellant was the sole occupant of the vehicle, and appellant referred to the guns as "heat." *Greer,* 436 S.W.3d at 5 (State can meet burden with direct or circumstantial evidence, but must establish defendant's connection with firearm was more than fortuitous).

Moreover, appellant's statements to Favors, Shelton, and Brown about wanting to sell guns to them or someone they knew, Favors' description of the four guns, appellant's use of the word "heat" in reference to the guns, and appellant's action of covering the guns in a blanket could lead a rational juror to conclude the guns were "firearms" within the statutory definition as opposed to guns of the nonlethal variety.

The combined and cumulative force of this evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict, supports the jury's

finding that appellant, a convicted felon, unlawfully possessed a firearm. Considering all the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found appellant guilty of unlawful possession of a firearm by a felon beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Queeman*, 520 S.W.3d at 622. Consequently, we overrule appellant's second issue.

Conclusion

Having overruled both of appellant's issues, we affirm the judgment.

Judy C. Parker
Justice

Do not publish.