**MODIFY and AFFIRM; and Opinion Filed August 12, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00755-CR**

**No. 05-18-00756-CR**

**No. 05-18-00757-CR**

**No. 05-18-00758-CR**

**KAMERON HALL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause Nos. F16-35022-H, F16-35023-H, F16-35024-H, F16-35025-H**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

This is a consolidated appeal of four cases in which Kameron Hall was convicted of possession of cocaine, methamphetamine, and heroin, and unlawful possession of a firearm by a felon. In two issues, appellant challenges the sufficiency of the evidence to support his possession convictions and the deadly weapon findings, which impact his eligibility for parole. As modified, we affirm the judgments. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.7.

## BACKGROUND

Appellant was charged by indictments with the first-degree-felony offense of possessing with intent to deliver four or more but less than two hundred grams of cocaine, the second-degree-felony offense of possession with intent to deliver one to less than four grams of methamphetamine, the second-degree-felony offense of possession with intent to deliver one to less than four grams of heroin, and the third-degree-felony offense of unlawful possession of a firearm by a felon, after members of the Dallas Police Department Special Weapons and Tactics (SWAT) division executed a search warrant at a motel room occupied by appellant and two others that contained drugs, drug paraphernalia and a rifle.[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(c), (d); TEX. PENAL CODE ANN. § 46.04(a). Appellant pleaded not guilty to the offenses, waived trial by jury, and proceeded to trial before the court.

At trial, Sean Peniston, a detective with the Irving Police Department, testified he investigates narcotics and large scale crimes. He explained that in November of 2016, he began surveilling a suspected drug operation in a motel room located in Dallas.[2] After two weeks of surveillance, he applied for and obtained a search warrant. The next day, on December 8, 2016, members of the Dallas Police Department SWAT division executed the search warrant.

Matt Smith, a Senior Corporal in the SWAT division, helped execute the warrant and was one of the first officers to breach the subject motel room. At trial, he explained that he was part of a three-man team assigned to breach the motel room's window to gain a view into the room and to provide cover for the entry team as they breached the door. He further explained that, in addition to gaining a view into the room, officers often break the window to announce to the occupants that they are the police, so as to convey a robbery is not in progress. As his team broke the window,

---

[1] All of the occupants of the motel room were charged with possession of the drugs and the rifle. The possession of the firearm charge against an occupant other than appellant was later dropped because that occupant was not a felon at the time.

[2] The Irving Police Department was involved because they received a report of suspected drug trafficking at the motel.

Corporal Smith observed someone move from the middle of the room back toward the bathroom. He also observed an "AR-style" rifle on the bed. The rifle was later found to be loaded and ready to fire. Upon forcing open the room's locked door, the SWAT team observed three occupants hiding in the rear of the room, one of whom was appellant. The occupants were then taken into protective custody. The SWAT team's mission ended there and detectives from the Irving Police Department took over.

Detective Peniston and his team secured the scene and searched the room and the suspects. At trial, Detective Peniston testified that, upon entering the room, he and his team observed copious amounts of suspected controlled substances and drug paraphernalia scattered throughout the room, including digital scales for weighing drugs, and baking soda and a Pyrex dish used to transform powder cocaine into crack cocaine. There were glass pipes, used for smoking crack cocaine, as well as several lighters. Detectives found an Altoids tin containing twenty-five small baggies of crack cocaine on a table on the right side of the room. There was a clear baggie of tar heroin in the freezer. There were several small baggies of methamphetamine on top of a microwave. A Mason jar, containing what appeared to be powder cocaine, a baggie of methamphetamine, and a baggie of marijuana were on a table on the left side of the room. And, crack cocaine rock was on the television stand.

Due to the large quantity of drugs present and the presence of digital scales, Detective Peniston characterized the motel room as a "trap location," used not for its designated travel purpose, but for possession, manufacture, and distribution of narcotics. He further stated that the configuration of the room, with the narcotics further back from any point of entry and a weapon on the scene, was a strong indication that the occupants were using the motel room to manufacture narcotics. There was nothing to indicate anyone was living in the motel room, such as a change of clothes or items of food.

Detective Peniston further testified that during their search of the room detectives found Alcatel and Samsung cellphones, both of which belonged to appellant. The Samsung cellphone was inches from the Altoids tin containing crack cocaine. Text messages on that phone showed that appellant regularly had drugs in his possession available for others to purchase. The Alcatel cellphone was inside a drawer on the television stand, just below the crack cocaine rock. The phone contained text messages addressed to appellant asking if he had marijuana and inquiring whether he was going to be at "the room." The phone also had pictures in which appellant could be clearly identified as being in the motel room in the days prior to the execution of the search warrant.

Detective Peniston further testified that all three occupants of the room were located behind the bed, where the gun was displayed, and near the drugs. He explained this is significant because it establishes a point of control for the room in much the same way a clerk at a convenience store would be behind the counter to conduct sales rather than standing outside the door or at the doorway. The detectives searched appellant, and the other occupants of the room, and found $338 in cash in different, small denominations in appellant's pant pocket, which Detective Peniston testified signals narcotics sales because the amount and denominations allow for the making of change. The other occupants had lesser amounts of cash on them and one of them had a handgun.

A controlled substance chemist testified he analyzed the substances collected at the motel room on December 8, 2016. His analysis confirmed that the bags containing white material were cocaine with a total weight of approximately 9.7 grams, the crystalline material found in various baggies was methamphetamine with a total weight of approximately 1.5987 grams, and a dark brown material was heroin with a total weight of approximately 1.0430 grams.

Sergeant Barry Ragsdale, a supervisor in the Dallas Police Department Narcotics Division, testified regarding the making, distributing, and using of various narcotics. He confirmed

Detective Peniston's position that the motel room was a trap location. Sergeant Ragsdale also testified that the other items the officers recovered, such as the baking soda and Pyrex dish, were commonly used to cook cocaine powder into a crack cocaine rock. He noted that typically one person does not run a drug operation and it would be unusual for an untrusted person, or one unconnected to the drugs, to be near the drugs and money. He also explained that the presence of a gun is common in these situations to protect the business, the product, and people involved, as well as to intimidate a would-be robber.

The trial court found appellant guilty of the lesser-included offenses of possession of controlled substances, found appellant guilty of unlawful possession of a firearm by a felon, and sentenced appellant to five years' imprisonment in each case, to run concurrently.

### DISCUSSION

I.      Sufficiency of the Evidence to Support Possession Findings

In his first issue, appellant challenges the legal sufficiency of the evidence to prove the possession element of his four convictions.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We defer to the trier of fact's determinations of credibility and may not substitute our own judgment for that of the fact finder. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State,* 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

To establish unlawful possession of a controlled substance or a firearm, the State must prove the accused exercised control, management, or care over the substance or firearm, and that

the accused knew the matter possessed was contraband or a firearm. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Regardless of whether this evidence is direct or circumstantial, it must establish that the defendant's connection to the contraband or firearm was more than fortuitous. *Blackman v. State*, 350 S.W.3d 588, 594–95 (Tex. Crim. App. 2011). Thus, mere presence at the location where contraband or a firearm is found is insufficient, by itself, to establish the requisite degree of control to support a conviction. *Evans*, 202 S.W.3d at 162. However, presence or proximity, when combined with other evidence, often referred to as "links," either direct or circumstantial, may well be sufficient to establish care, custody or control of the contraband or firearm. *Id.* There is no set formula to determine what links are sufficient and the number of links present is not as important as the "logical force" or degree to which the factors, alone or in combination, tend to link the accused to the contraband or weapon. *Porter v. State*, 873 S.W.2d 729, 732 (Tex. App.—Dallas 1994, pet. ref'd). The absence of certain links does not constitute evidence of innocence to be weighed against the links present. *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). The affirmative–links analysis is not a distinct rule of legal sufficiency, but a model of applying the *Jackson* standard in the context of circumstantial-evidence cases. *Villarreal v. State*, No. 05-13-00629-CR, 2014 WL 3056509, at *4 (Tex. App.—Dallas July 7, 2014, no pet.) (not designated for publication). Accordingly, we still defer to the factfinder's credibility and weight determinations and its ability to draw reasonable inferences from basic facts to ultimate facts. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

Some factors that may establish a link to a weapon and/or contraband include the following: (1) whether the contraband or weapon was in plain view; (2) the accused's proximity to and the accessibility of the weapon or contraband; (3) whether the accused owned or controlled the place where the contraband or weapon was found; (4) whether the place where the drugs and

weapon were found was enclosed; (5) whether the accused was found with a large amount of cash; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; and (8) whether the accused made furtive gestures. *See Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 and *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

In this case, several factors link appellant to the contraband.[3] The evidence established that due to suspected drug trafficking, an Irving Police Department detective surveilled the motel for several days before the SWAT team executed the search warrant. The room under surveillance was enclosed and members of the SWAT team had to breach the door to enter. *See Tate*, 500 S.W.3d at 414 (whether the place in which the contraband was found was enclosed is an affirmative link). Upon entering, they discovered appellant and two other men hiding in the rear of the room. *See Barbosa v. State*, 537 S.W.3d 640, 645 (Tex. App.—San Antonio 2017, no pet.) (appellant's presence at the time of the search is an affirmative link). Appellant had a large amount of cash on him, in small denominations, which Detective Peniston testified is an indicia of drug selling. *See Tate*, 500 S.W.3d at 414 (appellant in possession of a large amount of cash is an affirmative link). Detectives found copious amounts of controlled substances in plain view, along with drug paraphernalia. *See id.* (contraband in plain view is an affirmative link and presence of drug paraphernalia is an affirmative link). Specifically, the detectives found marijuana, cocaine, methamphetamine, heroin, glass pipes to smoke crack cocaine, lighters, multiple digital scales to weigh drugs, countless distribution baggies, a razor blade used to cut heroin, and baking soda, used to make a crack cocaine rock.

---

[3] Those factors are: appellant was present when the search occurred; the contraband was in plain view; appellant was near the contraband; drug paraphernalia were present; the motel room was enclosed; appellant was found with a large amount of cash; and, while the room may have been registered in Fletcher's name, appellant was no stranger to the room.

The motel room was small and appellant and the other occupants were in close proximity, with equal access, to the contraband. *See id.* (proximity to the contraband is an affirmative link). Appellant's Alcatel cellphone rested in a drawer inches below 1.8 grams of crack cocaine and his Samsung cellphone sat inches from the Altoids container full of crack cocaine. Texts and photos on appellant's cellphones established he had previously visited the same motel room days before the search warrant was executed. The fact that one of his cellphones was inside the television stand drawer showed he was not a random invitee to the room. Additionally, Sergeant Ragsdale indicated it was unlikely that appellant just happened to be present in the room that day. Appellant was a trusted party or involved in the drug operation. While one of the other individuals rented the room, proof that appellant personally rented or owned the place where law enforcement found the contraband is not required. *See e.g.*, *Thompson v. State*, Nos. 01-09-00567-CR, 01-09-00568-CR, 2011 WL 649683, at *4 (Tex. App.—Houston [1st Dist.] Feb. 17, 2011, no pet.) (mem. op., not designated for publication) (appellant exercised control over cocaine where it was found in plain view in a chair next to him, and another party owned the house). Moreover, possession need not be exclusive. *Henry v. State*, 409 S.W.3d 37, 42 (Tex. App.— Houston [1st Dist.] 2013, no pet.).

We conclude, under the *Tate* factors, the State affirmatively linked appellant to the controlled substances. Accordingly, a rational factfinder could have found that appellant, individually, or acting with others, knowingly possessed the contraband found in the motel room. *Jackson*, 443 U.S. at 318–19.

As to appellant's contention the evidence was insufficient to support the trial court's finding he unlawfully possessed a firearm, we analyze the sufficiency of the evidence for unlawful possession of a firearm by a felon under the same laws used in unlawful possession-of-a-

controlled-substance cases. *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.). We have set forth the standard of review *supra*.

To establish unlawful possession of a firearm by a felon, the State must prove the accused was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from supervision, whichever date is later. TEX. PENAL CODE ANN. § 46.04(a)(1). To establish the possession element, the State was required to prove: (1) the accused exercised actual care, control, or custody of the firearm; (2) he was conscious of his connection with it; and (3) he possessed the firearm knowingly or intentionally. *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). The State is not obliged to prove the accused had exclusive possession of the firearm. *Id.* If the firearm is not found on the accused's person or is not in the exclusive possession of the accused, the evidence must affirmatively link the accused to the firearm. *Bates*, 155 S.W.3d at 216.

Appellant contends his only link to the firearm was the fact that he and the firearm were in the same room and, citing this Court's decision in *White v. State*, claims this link does not establish the rifle was in his care, custody, control or management. No. 05-08-00241-CR, 2011 WL 5925138 (Tex. App.—Dallas Nov. 22, 2011, no pet.) (not designated for publication). Contrary to appellant's contention, there are several factors linking him to the rifle.[4] In addition to establishing appellant was present in the motel room where the rifle was found, the evidence established appellant was in close proximity to the rifle. *Evans*, 202 S.W.3d at 162. The rifle was in plain view on the bed. *Id.* The rifle was positioned between the door, the occupants and the drugs. *Id.* Given the size of the room and the positioning of the rifle, each of the room's occupants had equal access to the rifle. *Id.*

---

[4] In the *White* case, the accused was merely present on the porch of the house in which the firearms were located. *Id.* at *3. The evidence showed White managed and collected rent for several properties, including the house in which the firearms were located, the tenant and several other people were at the house, and the firearms belonged to the tenant. *Id.* at *3–4.

Based on the foregoing evidence, viewed in the light most favorable to verdict, a rational factfinder could infer that appellant and the other occupants of the room shared joint possession of the motel room and, together, possessed the rifle. *Jackson*, 443 U.S. at 318–19. Accordingly, the evidence is sufficient to support appellant's conviction for unlawful possession of a firearm by a felon.

Because the evidence is legally sufficient to establish appellant possessed the controlled substances and the firearm, we overrule appellant's first issue.

II.    Sufficiency of the Evidence to Support Deadly Weapon Findings

In his second issue, appellant contends the evidence is legally insufficient to support the trial court's deadly weapon findings. Specifically, he claims the evidence is insufficient to prove the rifle facilitated his possession of the controlled substances. We have set forth the legal sufficiency challenge standard of review *supra*.

To support a deadly weapon finding, the deadly weapon must be "used" or "exhibited" during the commission of a felony offense, or during immediate flight from the commission of a felony offense, and the defendant used or exhibited the deadly weapon, or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. ANN. art. 42A.054.

The "use" element can be satisfied by evidence the accused, in the commission of a felony, used the weapon to protect or facilitate the care, custody, and management of contraband. *Coleman v. State*, 145 S.W.3d 649, 654 (Tex. Crim. App. 2004). A deadly weapon is "exhibited" if it was consciously shown, displayed, or presented during the commission of a felony offense. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989).

In determining whether a weapon was used as a deadly weapon in furtherance of possessing a controlled substance, reviewing courts consider the cumulative effect of several factors,

–10–

including: (1) the type of gun involved; (2) whether the gun was loaded; (3) whether the gun was stolen; (4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; (5) the accessibility of the gun to whomever controlled the premises; (6) the quantity of drugs involved; and (7) any evidence that might demonstrate an alternative purpose for the presence of the gun. *Coleman*, 145 S.W.3d at 658–60 (Cochran, J., concurring); *Castillo v. State*, 426 S.W.3d 135, 138 n.2 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The focus is on the proximity of the gun to the drugs, not the proximity of the gun to the defendant. *McClenon v. State*, Nos. 05-14-00833-CR, 05-14-00834-CR, 2015 WL 4739589, at *5 (Tex. App.—Dallas Aug. 11, 2015, pet. ref'd (mem. op., not designated for publication) (citing *Coleman*, 145 S.W.3d at 654–55)).

In this case, the evidence established the weapon was loaded, consciously displayed in the middle of a small room, in close proximity to the drugs and drug paraphernalia, and easily accessible to all occupants, including appellant. The evidence also established there were copious amounts of drugs present and Sergeant Ragsdale testified that guns are often used to protect the contraband and those present. We conclude this evidence established appellant used or exhibited the rifle in furtherance of possessing controlled substances. *See Castillo*, 426 S.W.3d at 138–39 (loaded assault rifle and shotgun in plain view, located in close proximity to drugs and drug paraphernalia in the room where appellant was found, were used to facilitate appellant's possession of the drugs); *Smith v. State*, 176 S.W.3d 907, 920 (Tex. App.—Dallas 2005, pet. ref'd) (unloaded firearms stored close to marijuana facilitated the appellant's possession of marijuana); *Gale v. State*, 998 S.W.2d 221, 222-23 (Tex. Crim. App. 1999) (where officers found loaded guns, marijuana packaged for sale, and cash together in a small closet, a rational factfinder could conclude that the guns facilitated appellant's possession of marijuana, despite presence of the appellant's wife).

Based on the evidence, viewed in the light most favorable to the verdicts, the trial court could reasonably find appellant used or exhibited a deadly weapon while committing the offenses of possession of illegal substances beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. Consequently, the evidence is legally sufficient to support the deadly weapon findings. We overrule appellant's second issue.

III.     Modification of the Judgments

In two cross issues, the State contends the judgments contain errors and requests that we modify the judgments to speak the truth. Each of the judgments states appellant pleaded not guilty, rather than guilty, to the charged offenses. In addition, in cause numbers F16-35022-H (possession with intent to deliver cocaine case) and F16-35024-H (possession with intent to deliver heroin case), the judgments do not identify the controlled substance for which appellant was found to be in possession and, in cause number F16-35024-H includes a substance amount greater than the amount the trial court found. Moreover, in cause number F16-35024-H, the judgment incorrectly identifies the offense as a second-degree felony when it should be a third-degree felony.

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1991). We sustain the State's cross-issues and modify the judgments to indicate appellant pleaded not guilty to the charged offenses. We also modify the judgments in cause numbers F16-35022-H and F16-35024-H to reflect the more accurate convictions of possession of cocaine and possession of heroin. In addition, we modify the judgment in cause number F16-35024-H to reflect the amount possessed was one gram. Further, we modify the judgment in cause number F16-35024-H to reflect that appellant was convicted of a third-degree felony, rather than a second-degree felony.

## CONCLUSION

As modified, we affirm the trial court's judgments.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

180755F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

KAMERON HALL, Appellant

No. 05-18-00755-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F-1635022-H.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To indicate appellant pleaded not guilty to the offense and to indicate that the conviction was for possession of cocaine.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 12th day of August, 2019.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

KAMERON HALL, Appellant

No. 05-18-00756-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F-1635023-H.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To indicate appellant pleaded not guilty to the offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 12th day of August, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KAMERON HALL, Appellant

No. 05-18-00757-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas
Trial Court Cause No. F-1635024-H.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To indicate appellant pleaded not guilty to the offense, to indicate that the conviction was for possession of heroin in the amount of 1 gram, and to reflect that appellant was convicted of a third-degree felony, rather than a second degree felony.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 12th day of August, 2019.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

KAMERON HALL, Appellant

No. 05-18-00758-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas
Trial Court Cause No. F-1635025-H.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

To indicate appellant pleaded not guilty to the offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 12th day of August, 2019.